Peggy WATSON, as a parent of
Ben WATSON, a disabled
student, Plaintiff,

v.

KINGSTON CITY SCHOOL
DISTRICT, Defendant.

No. 1:03–CV–370.

United States District Court,
N.D. New York.

July 14, 2004.

Family Advocates, Inc., Kingston, NY
(Rosalee Charpentier, of counsel), for
plaintiff.

Shaw & Perelson, LLP, Highland, NY
(Mark C. Rushfield, of Counsel), for defendant.

### MEMORANDUM–DECISION and ORDER

HURD, District Judge.

## I.  INTRODUCTION

Plaintiff Peggy Watson ("plaintiff") brings this suit against defendant Kingston City School District ("District") alleging failure to provide her son, Ben, with a free appropriate public education ("FAPE"), in violation of the Individuals with Disabilities in Education Act, 20 U.S.C. § 1415(i)(2) ("IDEA"). Specifically, plaintiff contests a State Review Officer's ("SRO") conclusion that her son's Individualized Education Program ("IEP") for the 2001–02 school year was appropriate.

Both parties have moved for summary judgment pursuant to Fed.R.Civ.P. 56.[1] Oral argument was heard on March 25, 2004, in Albany, New York. Decision was reserved.

## II.  FACTS

Ben was classified as learning-disabled by the District's Committee on Special Education ("CSE") in December 1993 due to auditory-language processing problems. (Docket No. 12, p. 1.) In accordance with the IDEA, the CSE developed yearly IEPs for Ben. (Docket No. 33, SD–6, 7, 10, 20, 33, 41) ("Admin.Rec.SD–_").

His disputed 2000–01 1EP, modified after settlement, provided that Ben: (1) be placed in special, non-inclusive classes for

---

**1.** The parties, having agreed that this matter could be resolved on the administrative record, engaged in no discovery.

English, Math, Science and Social Studies with 12 students for 1 regular classroom teacher and 1 special education teacher, (2) receive speech/language therapy once a week, and (3) receive multi-sensory reading instruction. (Admin.Rec.SD–41, p. 1.)

On October 2, 2000, plaintiff sought an independent audiological evaluation from Professor Gertner ("Gertner") of Kean University. Gertner found that Ben had trouble hearing and repeating words. He recommended that Ben be placed in a reading program that utilized Orton–Gillingham instruction ("O–G"), a form of multi-sensory reading instruction. Gertner also recommended that Ben be instructed in smaller, sound-controlled classrooms, with as much one-on-one instruction as possible. (Admin.Rec.SD–43.)

On October 10, 2000, the CSE suggested that Ben receive a behavioral evaluation because he was being disruptive in class. (Admin.Rec.SD–45.) Plaintiff asked the District to implement Gertner's recommendation that the school use the O–G method of instruction and that her son be placed in a private school, in order to negate the potential stigma of Ben being viewed as a special education student. *Id.* The District denied plaintiff's requests.

Ben spent approximately one month at a District school in the fall of 2000, before being removed from the District school by plaintiff. (Admin.Rec.SD–47.) He was subsequently home-schooled from October until December 2000, and then began tutoring sessions in January. *Id.* District teachers tutored Ben in all his classes except Math, for which he received instruction from his grandmother, a retired teacher. *Id.* Testimony below indicated that before voluntarily leaving the District, Ben voiced his concern and anger about being classified as a special education student, (Docket No. 29, pp. 67, 83–85), and that at plaintiff's request, the District had begun investigating the possibility of placing Ben in an "integrated" classroom setting, (Docket No. 18, p. 11.)

Plaintiff obtained a second independent evaluation from Dr. Phoebe Liss ("Liss") in December 2000. Liss also recommended that Ben receive O–G instruction in a small classroom environment. (Admin.Rec.SD–49.) The CSE thought that Liss's recommendations could be applied within the District, although it was cognizant that Ben was concerned about being stigmatized for receiving special education services. Ben's home-schooling continued throughout the spring of 2001. (Docket No. 28, p. 4.)

In June 2001, the CSE developed Ben's 2001–02 IEP. In creating the IEP, the CSE considered Ben's auditory-processing needs and level of academic performance, as shown by his April 2000 WIAT and November 1999 WISC III scores. (Docket No. 41.) While not included in the IEP, additional material was assessed by the CSE, including Ben's IQ scores and successful English Regents exam results, Gertner's and Liss's independent evaluations, spring 2001 tutoring evaluations completed by District instructors, two psychology exams conducted by the District, and previous IEPs. (Docket No. 28, p. 6; Docket No. 29, pp. 65–67.) The District also discussed mainstreaming alternatives with plaintiff, Ben's potential need for an FM trainer, and preferential seating within classrooms. (Docket No. 28, p. 6; Docket No. 29, pp. 60–62, 247.)

Based on Ben's needs, the CSE developed a series of related objectives to assist Ben in progressing through the high school curriculum. These objectives focused on improving his language, mathematical, organizational, study, and attending skills. The CSE also provided Ben with special education services that would help him to successfully meet the IEP's objectives, while placing him in a less re-

strictive classroom environment. (Docket No. 41; Docket No. 29, pp. 36, 40.) These services included speech therapy and multi-sensory education sessions to improve his vocabulary and comprehension skills. The IEP also stipulated that several classroom modifications would be put in place, such as repetition of material by the classroom instructor and modification of tests and assignments. (Docket No. 29.)

Ben's 2001–02 IEP specifically recommended that Ben continue to be classified as learning-disabled but that he be placed in a larger, more inclusive classroom setting. The CSE also stated that once every six school days he should receive one-on-one speech therapy for forty minutes and multi-sensory reading instruction for thirty minutes. (Docket No. 41.)

Plaintiff requested an impartial review of the 2001–02 IEP on July 1, 2001. She was particularly concerned that the IEP did not include appropriate academic and social peers for Ben. (Admin.Rec.SD–67.)

The impartial hearing officer ("IHO") reviewed the proposed IEP and found that it was inappropriate for Ben. (Docket No. 27, pp. 9–10.) Specifically, the IHO stated that the CSE had insufficiently developed Ben's IEP because (1) it had not personally observed him in the home-school setting, (2) the IEP was not created when Ben had started home-schooling, (3) it had not considered the recommendations of Gertner or Liss, or the prospect of Ben attending a private school, (4) the IEP did not include an assistive technology evaluation, and (5) the language instruction was not sufficient in length or frequency. *Id.* The IHO advised the CSE to revise the IEP based on his recommendations and to specifically consider implementing an O–G program of instruction. *Id.*

To address concerns about what she felt were ambiguities in the IHO's decision, plaintiff appealed to the State Review Officer ("SRO"). On November 25, 2002, the SRO reversed the finding of the IHO and reinstated the IEP. (Docket No. 28, p. 9.) The SRO found that the CSE had sufficient knowledge of Ben's needs and that the IEP sufficiently addressed those needs. *Id.* at 1–9. Specifically, the SRO found that because Ben's home-schooling was a temporary, interim placement, the CSE was not required to observe it. *Id.* at 6. An assistive technology evaluation was deemed unnecessary by the SRO. *Id.* The SRO also found that Ben did not need continuous O–G instruction throughout the day because his speech therapy and multi-sensory sessions would sufficiently address his disability. *Id.* at 8. The SRO regarded the IEP's comprehensive approach of combining special education sessions with in-class modifications as "especially significant for this student, in view of his feelings about being identified as a student with a disability." *Id.*

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Richardson v. N.Y. State Dep't of Corr. Servs.,* 180 F.3d 426, 436 (2d Cir. 1999). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, however, the nonmoving party "must set forth

specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56; *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505. At that point, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*, 475 U.S. at 586, 106 S.Ct. 1348. Indeed, to withstand a summary judgment motion, the nonmoving party must demonstrate that sufficient evidence exists upon which a reasonable jury could return a verdict in its favor. *Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505; *Matsushita Elec.*, 475 U.S. at 587, 106 S.Ct. 1348.

## B. IDEA

The purpose of the IDEA is to provide all disabled students with a FAPE. 20 U.S.C. § 1400(d). States receive federal funding for complying with the IDEA by developing specialized education plans and services for students with disabilities (IEPs). 20 U.S.C. § 1412(a)(1)(A). The IDEA also mandates schools provide a FAPE to students in the least restrictive environments available, to be achieved primarily through mainstreaming disabled students into non-disabled classroom settings. The only exception to the mainstreaming requirement is when "the nature or severity of the handicap is such that education in regular classes...cannot be achieved satisfactorily." 20 U.S.C. §§ 1412(a)(5), 1412(5); *see also Honig v. Doe*, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988); *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377 (2d Cir. 2003); *Wall v. Mattituck–Cutchogue Sch. Dist.*, 945 F.Supp. 501 (E.D.N.Y.1996).

While the IDEA requires districts to provide appropriate education to disabled students, this is not necessarily synonymous with offering disabled students the best educational opportunities available. The IDEA only requires that districts give disabled students a "basic floor of opportunity...consisting of access to specialized institutions and related services which are individually designed to provide educational benefit." *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 201, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982).

The Supreme Court in *Rowley* held that the IDEA offered disabled students both procedural and substantive guarantees. 458 U.S. at 192, 102 S.Ct. 3034. Specifically, school districts must (1) comply with certain procedural mandates in the statute when formulating an IEP for a disabled student, and (2) ensure that the substantive contours of the IEP adopted are reasonably calculated to confer an educational benefit upon the child. *Id.* The District's compliance with these two requirements—both alleged by plaintiff to be unsatisfied—will be discussed in reverse order.

### 1. *Substantive Challenges to IEP*

Plaintiff alleges that the 2001–02 IEP is substantively inappropriate, in essence, because it did not implement Gertner's and Liss's recommendations. Plaintiff is particularly concerned that the IEP did not include O–G instruction or appropriate intellectual and social peers for Ben. (Docket No. 28, p. 5; Docket No. 18 p. 19.) She claims that the Kildonan School, a private school specializing in educating dyslexic students, would provide Ben with an appropriate education. *Id.*

The administrative record and rulings are crucial in determining the appropriateness of Ben's IEP because a Court's ability to review administrative hearings, regarding whether a district has complied with the IDEA, is restricted. *Sherman v. Mamaroneck Union Free Sch. Dist.*, 340 F.3d 87, 93 (2d Cir.2003). Judges are not trained educators and are required to afford significant deference to State educational agencies' decisions, 20 U.S.C. 1415(b), 1415(c), without "imposing their

view of preferable educational methods upon the states." *Rowley,* 458 U.S. at 207, 102 S.Ct. 3034. Any questions regarding appropriate methodology are left to individual states to decide. *Doe v. Bd. of Educ. of Tullahoma City Sch.'s,* 9 F.3d 455, 458 (6th Cir.1993) ("[The IDEA] giv[es] utmost deference to specific educational decisions once it is determined that they stem from the procedures outlined in the Act."). This deference to the final decision issued by a state agency on an issue of educational methodology is no less appropriate simply because the SRO has disagreed with the IHO. *Karl v. Bd. of Education of Geneseo CSD,* 736 F.2d 873, 877 (2d Cir.1984) ("We believe *Rowley* requires that federal courts defer to the final decision of the state authorities and that deference may not be eschewed merely because a decision is not unanimous or the reviewing authority disagrees with the hearing officer"); *see also Mavis ex rel. Mavis v. Sobol,* 839 F.Supp. 968, 986 (N.D.N.Y.1993).

Here, while an argument could be made that the 2001–02 IEP did not provide Ben with the best educational services given his situation, there is sufficient support in the administrative record that the programming recommended by the CSE and approved by the SRO satisfies the substantive requirement of the IDEA. Quite simply, all of the areas about which plaintiff protests—e.g., class size, peer group, type of instruction—involve questions of methodology more appropriately answered by the state and district decision-makers.

The SRO specifically examined plaintiff's concerns and found that the IEP appropriately identified and considered them, developed adequate objectives, and provided educational services that would allow Ben to attain his objectives. (Docket No. 28, pp. 7–9.) It was noted that O–G instruction would not fully address Ben's needs because it is a form of multi-sensory edu-

cation that focuses primarily on phonics, whereas his reading difficulties are with comprehension. *Id.* at 8. The SRO therefore held that plaintiff's request for private O–G instruction was unwarranted because Ben's objectives could be successfully met with the District's more comprehensive use of multi-sensory education. *Id.* These conclusions cannot and will not be disturbed.

The mere fact that a separately hired expert has recommended different programming does nothing to change this, as deference is paid to the District, not a third party. *See Pascoe v. Washingtonville Cent. Sch. Dist.,* No. 96 Civ. 4926, available at 1998 WL 684583 (S.D.N.Y. Sept.29, 1998) (holding that recommendation that a student be given private O–G instruction did not, in itself, invalidate substantive recommendations in IEP); *see also Tucker v. Bay Shore Union Free Sch. Dist.,* 873 F.2d 563, 567 (2d Cir.1989) (stating that an IEP need not confer "everything that might be thought desirable by loving parents"). So long as the administrative record provides sufficient support that the substantive contours of the IEP are reasonably calculated to confer educational benefits, as it does here, it is not within a Court's purview to upset the programming recommended by the CSE.

### 2. *Procedural Challenges to IEP*

Although plaintiff also lodges procedural challenges to the formulation of the IEP under the first *Rowley* factor, the defects in this regard, if any, were minor and, given the substantive propriety of the IEP, do not rise to a level where relief under the IDEA is appropriate. *Grim v. Rhinebeck Cent. Sch. Dist.,* 346 F.3d 377, 381 (2d Cir.2003) ("[not every] procedural error in the development of an IEP renders that IEP legally inadequate under the IDEA."); *Evans v. Bd. of Educ. of Rhinebeck Cmty. Sch. Dist.,* 930 F.Supp. 83, 93–94 (S.D.N.Y. 1996) ("procedural flaws do not automati-

cally require a finding of a denial of a free appropriate education...").

## IV. CONCLUSION

It cannot be said that the programming in Ben's 2001–02 IEP is not reasonably calculated to confer an educational benefit upon him. Any procedural flaws that accompanied the formulation of this IEP were minor in nature, and do not alone equate to the denial of a FAPE under the IDEA.

Accordingly, it is

ORDERED that

1. Defendants' motion for summary judgment is GRANTED;

2. Plaintiff's cross-motion for summary judgment is DENIED; and

3. The complaint is DISMISSED.

The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.