David and Marilyn PINN on behalf of their disabled son STEVEN P., Plaintiffs

v.

HARRISON CENTRAL SCHOOL DISTRICT, Defendant

No. 04 CIV.2942 SCR.

United States District Court, S.D. New York.

Feb. 6, 2007.

Rosalee Charpentier, The Law Office of Salamon Davis, New York City, for Plaintiffs.

Susan M. Gibson, Ingerman Smith, L.L.P., Hauppauge, NY, for Defendant.

## MEMORANDUM DECISION AND ORDER

ROBINSON, District Judge.

This case is brought under the Individual with Disabilities Education Act ("IDEA") and Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"). The action is brought by David and Marilyn Pinn ("Plaintiffs"), parents of Steven P. ("Steven") a former student in the Harrison Central School District ("Defendant"). The complaint seeks review of an August 2004 determination by the New York State Department of Education State Review Officer ("SRO") that Plaintiffs are not entitled to full tuition reimbursement for Steven's placement in a private school. Plaintiffs also assert a claim for damages under the Rehabilitation Act. In November 2004, both parties moved for summary judgment. For the reasons stated below, Plaintiffs' motion for summary judgment is denied, and Defendants' motion for summary judgment is granted.

### I. The IDEA

Under the IDEA, a school district must provide each student with a disability with "special education and related services". 20 U.S.C. § 1401(9). These services must be administered according to an Individualized Education Program ("IEP") that the school district implements each year for each student with a disability. *Id.* § 1414(d).

Under the IDEA, parents "may present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the

provision of a free appropriate public education to such child." *Id.* § 1415(b)(6). The parents involved in such a complaint "shall have an opportunity for an impartial due process hearing." *Id.* § 1415(f). In New York, such hearings are conducted before an impartial hearing officer ("IHO") that is appointed by the local board of education. *See* N.Y. Educ. L. § 4404(1). At this hearing, the burden of demonstrating the appropriateness of its proposed IEP is on the school district. *See, e.g., Walczak v. Florida Union Free Sch. Dist.,* 142 F.3d 119, 122 (2d. Cir.1998). The IHO's decision may be appealed to a SRO. *See* N.Y. Educ. L. § 4404(2). Here, the school district again has the burden of showing that the educational program the CSE recommended is appropriate.

The SRO's decision may be challenged in either state or federal court. *See* 20 U.S.C. § 1415(i)(2)(A). However, the IDEA strictly limits judicial review of state administration decisions, *Grim v. Rhinebeck Central School Dist.,* 346 F.3d 377, 380 –381, (2d Cir.2003) (citations omitted), and administrative judgments that implicate educational policies and practices require "substantial deference." *Cerra v. Pawling Cent. Sch. Dist.,* 427 F.3d 186, 191 (2d Cir.2005).

## II. Factual Background

Plaintiffs assert that beginning in the sixth grade, Steven began experiencing belching episodes associated with school. A psychiatric evaluation concluded that anxiety about his performance in school was causing Steven gastrointestinal problems. Plaintiffs assert that these episodes led to interruptions in Steven's sleep, causing him to be absent from school. In consequence, Steven missed 22 days of school that year, and was tardy 19 times.

As a result, Plaintiffs first referred Steven to the Committee on Special Education ("CSE") in April 1999, when Steven was in the 6th Grade. He was again referred to the CSE in September 2000, when he was in the 8th grade. Evaluations conducted as a result of these referrals found that Steven had above average verbal abilities, but some weakness in mathematics, and planning and organizing. In both instances, the CSE determined that Steven was ineligible for services because no severe learning disability was found.

In July 2001, just before Steven started the 9th grade, Plaintiffs once again referred him to the CSE for classification. In August 2001, the CSE again convened in order to determine whether Steven was eligible for services. Plaintiffs provided the CSE with substantial information, including a private psychological evaluation conducted by Dr. Jeanne Dietrich. Dr. Dietrich's evaluation concluded that Steven was demonstrating characteristics of Non–Verbal Learning Deficits ("NVLD"), Attention–Deficit Disorder ("ADD"), and that a Tic disorder could not be ruled out. The evaluation also stated that Dr. Dietrich's found a 22 point discrepancy between Steven's verbal IQ and performance. Dr. Dietrich's report states that an 11 point discrepancy is considered "significant" that such gaps are often associated with learning disabilities.

Nevertheless, the CSE once again found that Steven was ineligible for classification, stating that Steven did not have evidence of a specific learning disability. The CSE did, however, state that it did not have enough information to rule out eligibility as Emotionally Disabled or Other Health Impaired, and that it needed more information on Steven's ADD and anxiety issues. The CSE stated that it would reconvene upon completion of a speech/language assessment and receipt of psychiatric information from Steven's parents. As a result of this meeting no IEP was in place

for Steven at the beginning of the 2001–2002 school year.

In November 2001, the CSE convened again to assess Steven's eligibility for special services. At this meeting, the CSE reviewed the speech and language assessment recommended at the August 2001 meeting, and found that no speech and language services were indicated. Plaintiffs also provided the CSE with a letter written by Steven's private psychiatrist, Dr. Kornhaber, which diagnosed Steven with ADD, depression and anxiety. Once again, the CSE did not classify Steven, stating that Steven did not meet the eligibility criteria for Emotionally Disabled or Learning Disabled. The CSE did, however, refer Steven for consideration for a 504 Accommodation Plan. The plan called for various testing accommodations for Steven, including extended time, use of a calculator and having directions read and explained. Plaintiffs subsequently wrote a letter to Peggy MacDonald, Director of Special Education, stating that they disagreed with the CSE's assessment that Steven's educational needs could be met with this Accommodation Plan.

It was also at this November 2001 meeting that Plaintiffs reported to the CSE that they had unilaterally placed Steven at the Westfield Day School ("Westfield") in September 2001 (the reimbursement for which is the subject of this litigation). The environment at Westfield provided Steven with substantial individual attention, including some one-on-one tutoring. As of August 2002, Westfield students had been diagnosed with a "wide variety of moderate-to-severe psychiatric conditions", and 90% of Westfield students had been on psychiatric medication. The school also provided both individual and group counseling. Plaintiffs assert that Steven "did very well" at Westfield, and had a clear improvement in his mood, energy level, and interest level.

In January 2002, Plaintiffs again wrote to Peggy MacDonald, reiterating their objections to the CSE's November 2001 decision not to classify Steven. Plaintiffs also requested an impartial hearing before an IHO.

In February 2002, Plaintiffs unilaterally removed Steven from Westfield and placed him at the Westchester Magnet Academy ("WMA"), an affiliate of SUNY–Purchase. WMA was an experimental program that participated in the Harrison School District. Plaintiffs assert that upon Steven's placement at WMA, he immediately "reverted to a state of emotional and educational dysfunction".

On April 2002, the CSE once again convened to review the results of Steven's most recent language assessment and psychiatric evaluation. The psychiatric evaluation, conducted by Dr. Sheree Krigsman, largely confirmed the findings of Dr. Dietrich: Steven was diagnosed with ADD, NVLD, and Transient Tic disorder. In addition Dr. Krigsman diagnosed Steven with "major depressive episode with psychotic features", Anxiety disorder, and Parent–Child relational problems. Dr. Krigsman stated that she agreed with the specific recommendations outlined in Dr. Dietrich's report. She also stated that Steven's psychiatric condition exerted a negative influence on his academic performance.

Based on this evaluation, the CSE classified Steven as Emotionally Disturbed and eligible for an IEP. The IEP recommended by the CSE called for various adjustments to Steven's school day, including a shortened school day, one-on-one counseling, and one-on-one tutoring in Math and English. However, Steven was to remain at WMA, rather than disrupting his schooling by placing him in a new environment so close to the end of the school year. The CSE recommended that

an investigation be conducted in order to find Steven an appropriate therapeutic environment for the 2002–2003 school year. On April 30, 2002, Defendant received a letter from Plaintiffs indicating that they were rejecting the recommendations of the CSE, and that Plaintiffs were once again placing Steven at Westfield.

The parties then proceeded to an impartial hearing pursuant to N.Y. Education Law § 4404(1). The IHO held 5 hearings between June 2002 and September 2002, and rendered a decision on November 8, 2002. The decision of the IHO found, among other things, that 1) in the beginning of the 2001–2002 school year, there was insufficient evidence to justify Steven's classification, 2) the IEP recommended by the CSE in April 2002 was appropriate for Steven based on the information available at the time, 3) Plaintiff's never adequately explained how Westfield satisfied any aspects of Steven's IEP by providing reasonable benefit or appropriate placement.

Plaintiffs appealed the decision of the IHO to the SRO, pursuant to N.Y. Education Law § 4404(2). After reviewing the record, the SRO held that: 1) when the CSE convened, both in August 2001 and again in November 2001, it had sufficient information to support a determination that Steven was eligible for classification as Emotionally Disturbed; 2) Defendant therefore failed to provided an appropriate program for Steven between August 2001 and April 25, 2002; 3) Plaintiffs did not meet their burden of demonstrating that Westfield was an appropriate placement, and Westfield was also not the Least Restrictive Environment (LRE) for Steven, and therefore Plaintiffs were not entitled to tuition reimbursement for the period September 2001 to January 2002, 4) the IEP recommended at the April 25, 2002 meeting accurately reflected Steven's needs and was reasonably calculated to

provided educational benefit, and Plaintiffs were therefore not entitled to tuition reimbursement for the period May 14, 2002 to June 14, 2002, when Steven was once again enrolled in Westfield.

### III. Analysis

#### A. Summary Judgment Standard in IDEA Cases

A court deciding a summary judgment motion in an IDEA case must examine the administrative record and any additional evidence to determine if "there has been compliance with IDEA's processes and that the child's educational needs have been appropriately addressed." *Antonaccio v. Bd. of Educ. of Arlington Cent. Sch. Dist.*, 281 F.Supp.2d 710, 714 (S.D.N.Y.2003). The burden of proof rests with the party seeking relief. *See Schaffer v. Weast*, 546 U.S. 49, 126 S.Ct. 528, 531, 163 L.Ed.2d 387 (2005). Unlike an ordinary summary judgment motion, the existence of a disputed issue of material fact will not defeat the motion. *Viola v. Arlington Cent. Sch. Dist.*, 414 F.Supp.2d 366, 377 (S.D.N.Y.2006).

The Supreme Court and the Second Circuit have strictly limited judicial review of state administrative decisions in IDEA cases. *D.F. v. Ramapo Central Sch. Dist.*, 430 F.3d 595, 598 (2d. Cir. 2005); (citing *Board of Education of Hendrick Hudson Central School District Westchester County v. Rowley*, 458 U.S. 176, 204, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982); *Walczak*, 142 F.3d at 129). A district court must assess IDEA petitions based on the "preponderance of the evidence developed at the administrative proceedings and any further evidence presented by the parties." *Walczak*, 142 F.3d at 122–23. While "federal courts do not simply rubber stamp administrative decisions," *Id.* at 129, courts may not "substitute their own notions of sound educational

policy for those of the school authorities which they review." *Rowley*, 458 U.S. at 206, 102 S.Ct. 3034. Instead, federal courts reviewing administrative decisions must give "due weight" to the administrative proceedings, "mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *Walczak*, 142 F.3d at 129 (quoting *Rowley*, 458 U.S. at 206, 208, 102 S.Ct. 3034)(internal quotations omitted). District courts therefore give "substantial deference" to final administrative judgments implicating educational policies and practices. *Cerra*, 427 F.3d at 191. This deference is appropriate even where, as here, the SRO has partially disagreed with the IHO. *Watson v. Kingston City Sch. Dist.*, 325 F.Supp.2d 141, 145 (N.D.N.Y.2004)(citing *Karl v. Bd. of Educ. of Geneseo CSD*, 736 F.2d 873, 877 (2d Cir.1984)).

### B. Plaintiffs Are Not Entitled to Tuition Reimbursement

■ Where, as here, Plaintiffs are seeking reimbursement for the unilateral parental placement of a child, a Board of Education may be required to pay for educational services obtained for a student by his or her parent, if 1) the services offered by the board of education were inadequate or inappropriate, 2) the services selected by the parent were appropriate, and 3) equitable considerations support the parents' claim. *See M.S v.Bd. of Educ. of the City Sch. District of Yonkers*, 231 F.3d 96, 102, 104 (2d. Cir.2000); *see also Walczak*, 142 F.3d at 129 (citing *Burlington Sch. Comm. v. Dept. of Educ.*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985)).

■ Plaintiffs are not entitled to tuition reimbursement because they have failed to demonstrate that Westfield is an appropriate placement for Steven. The SRO's de-

cision found that the record contained little evidence that the program met Steven's educational needs. The director of Westfield, Peter Schoenholtz, was unable to provide specific information about educational programs offered at the school, and he did not know if any educational evaluations of Steven had been done (though he did state that he did not believe that any educational evaluations had been done). Mr. Schoenholtz also could not provide information about the types of classes Steven took, or the students with whom he took classes. The SRO also noted that while Westfield supposedly followed the New York State curriculum, students were not put into grades.

Moreover, there is strong evidence that Westfield was not an appropriate placement because it was not the least restrictive environment ("LRE") within which Steven could be placed. While failure of a parent to put a student in the LRE is not a bar to tuition reimbursement, *Gagliardo v. Arlington Cent. Sch. Dist.*, 418 F.Supp.2d 559, 564 (S.D.N.Y.2006), it is a factor which may be considered by a hearing officer. *See M.S*, 231 F.3d at 105. Here, in determining that Westfield was not an appropriate placement, the SRO considered the fact that Westfield was quite different than a mainstream educational environment. The school could sustain a maximum of 12 students, and there were only four to seven students during the time that Steven was enrolled there. At a given time, there was only one student of the same age as Steven, and the rest of the students were two or three years older. Much of Steven's education consisted of one-on-one tutoring, and he did not have the opportunity for taking classes in mainstream settings.

Moreover, when asked about the details of Steven's educational setting, Mr. Schoenholtz merely responded "There's isn't

any one way that it works." Mr. Schoenholtz also could not speak to the number of classes that Steven had with an individual instructor. In addition, Westfield's brochure states that the program is "essentially ungraded", and when Mr. Schoenholtz was asked about Steven's report cards from Westfield, he testified that he did not know how the grades were arrived at.

Plaintiff's arguments regarding the appropriateness of Westfield are ultimately unconvincing. First, Plaintiffs note that the SRO "neglected to note that [Westfield] was approved by the Commissioner of Education to operate as a school for ninth grade students with learning disabilities" and that the SRO "did not consider that [Steven] needed a ninth grade curriculum, and indeed at Westfield, he participated in, and passed the ninth grade curriculum". While it is true that Westfield was authorized to operate as a school for students grades seven through twelve, it is hard to see how the SRO's failure to mention this in his final report is cause for this court to depart from the deference due to the SRO. Moreover, Mr. Schoenholtz testified that Steven probably would not have moved on to the tenth grade if he had returned to public school because he had not completed ninth grade Regents requirements. Similarly, Plaintiffs argument regarding Steven's improved academic performance at Westfield is also unconvincing As the record indicates, Westfield was essentially an ungraded school, and to the extent that Steven was graded, Mr. Schoenholtz couldn't testify as to how those grades were arrived at.

Given these considerations, and the deference due to the determinations of state education officials, Plaintiffs have not demonstrated that the SRO erred in determining that Westfield was not an appropriate placement for Steven. *See M.S.*, 231 F.3d at 105 (district court overturned because it did not grant due deference to the SRO's determination of the appropriateness of a parent's placement). Because the appropriateness of Westfield is a necessary condition to tuition reimbursement, it is unnecessary for the court to reach the question of whether the SRO determination regarding the adequacy of the services was in error, or whether equitable considerations warrant reimbursement of tuition expenses.

## C. Defendants Are Not Entitled to Recover Damages Under the Rehabilitation Act

Plaintiffs are also not entitled to recover compensatory damages under § 504 of the Rehabilitation Act. See 29 U.S.C. § 794. Unlike in the case of Plaintiff's IDEA claim, summary judgment is appropriate in the case of their Rehabilitation Act claim only if there is "no genuine issue as to any material fact". Fed R. Civ. P. 56(c). Having reviewed the record, the Court finds that there is no issue of material fact with respect to the conduct of Defendant in this case. Summary judgment is therefore appropriate.

In order to obtain recovery under the Rehabilitation Act, a plaintiff must demonstrate 1) that he or she is a disabled person under the Act, 2) who has been excluded from benefits of a federally funded program or special service, 3) because of his or her disability. *Mrs. C. v. Wheaton*, 916 F.2d 69, 74 (2d Cir.1990). Where a plaintiff asserts denial of a free appropriate public education ("FAPE") as required by the IDEA, plaintiff must demonstrate bad faith or gross misjudgment. *Gabel ex rel. L.G. v. Bd. of Educ.*, 368 F.Supp.2d 313, 334 (S.D.N.Y.2005); *M.B. v. Arlington Central School District*, 2002 WL 389151 (S.D.N.Y., March 11, 2002).

The SRO found that FAPE had been denied for the 2001–2002 school year,

until April 25, 2002. Even assuming that the court, in giving the SRO's decision due deference, agreed with the SRO's finding of a denial of FAPE [1] for that time period, Plaintiffs have put forth insufficient evidence of bad faith or gross misjudgment on the part of the Defendant, and a review of the record reveals insufficient evidence of either. Nor have Plaintiffs put forth any evidence that Steven was denied a federal benefit *because* of his disability, or even alleged such facts in their complaint. Plaintiffs Rehabilitation Act claims are, in actuality, merely restatements of their IDEA claims—that Defendant failed to appropriately classify Steven. Summary judgment is therefore appropriate. *See Zahran v. N.Y. Dep't of Educ.*, 306 F.Supp.2d 204, 213 (N.D.N.Y.2004)(dismissing Rehabilitation Act claim because the claims were "substantially the same as that of the IDEA claim", which were "essentially challenges to the program itself, not of any type of discriminatory decisions".)

Indeed, plaintiffs have neglected to put forth any such evidence, even in support of their motion for summary judgment, or in response to Defendant's motion for summary judgment on this issue. *See Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 926 (2d Cir.1985)(party opposing summary judgment "may not stand mute in reliance solely upon its allegations when facing a substantial evidentiary submission refuting its claim".)

To the contrary, the record reveals that prior to August 2001, although it had evidence that Steven was having difficulty in school, it did not have evidence of a learning disability that warranted classification under the IDEA. In August 2001, the CSE again felt that it did not have sufficient evidence to classify Steven, but agreed to conduct a further investigation including a speech and language assessment and psychiatric evaluation, in order to determine whether Steven qualified for classification. In November 2001, when it decided that, despite these assessments, Steven did not qualify for classification, Defendant recommended a § 504 Accommodation plan in order to meet Steven's needs. During the relevant time period, the District never ignored Plaintiffs request to consider Steven for classification. In sum, Defendant attempted to address Plaintiffs' on several occasions, attempted to accommodate Steven even when it found that he was not eligible for classification, sought out additional information when it thought such information was necessary, and ultimately classified Steven when it felt had had evidence of disability. There is therefore ample evidence that Defendant did not act with bad faith or gross misjudgment. Moreover, given the fact that the IHO agreed with Defendant that FAPE had not been denied for the 2001–2002 school year (even prior to April 25, 2002), it is hard to see how such a judgment on the part of the Defendant was the result of bad faith or gross misjudgment. *Cf. R.B. ex rel. L.B. v. Board of Educ.*, 99 F.Supp.2d 411, 419 (S.D.N.Y.2000)(sufficient evidence of gross misjudgment found in part because IHO found that the defendants' conduct was tantamount to "gross neglect, incompetence and ineptitude".)

## IV. Conclusion

For the foregoing reasons, this Court affirms the decision of the State Review Officer that Plaintiffs are not entitled to tuition reimbursement under the IDEA. Accordingly, Defendant's motion for summary judgment is GRANTED and Plaintiffs' cross-motion for summary judgment is DENIED. The clerk of the court is

---

1. A stated earlier, in making this decision, the Court does not reach this question.

instructed to enter judgment for the Defendant and close this case.

*It is so ordered.*