**C.G. and L.G., on behalf of B.G., Plaintiffs,**

v.

**NEW YORK CITY DEPARTMENT OF EDUCATION, Defendant.**

**No. 09 Cv. 6169(BSJ).**

United States District Court, S.D. New York.

Oct. 25, 2010.

Gary S. Mayerson, Tracey Spencer Walsh, Mayerson and Associates, New York, NY, for Plaintiffs and Counter Defendant.

Andrew James Rauchberg, New York City Law Department, New York, NY, for Defendant.

### Memorandum and Order

BARBARA S. JONES, District Judge.

### MEMORANDUM AND ORDER

Pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415 (2006), and Article 89 of the New York State Education Law, and on behalf of their son B.G., C.G. and L.G. ("Plaintiffs") bring this action against the New York City Department of Education (the "DOE"). Plaintiffs appeal from a March 12, 2009 administrative decision (the "SRO Decision") of the New York State Depart-

ment of Education Office of State Review that declined to grant prospective funding for after-school services. Defendants cross appeal the SRO Decision to the extent that it declined to reimburse the DOE for payments advanced for such after-school services.

Plaintiffs now seek modified *de novo* review of the SRO Decision, and the DOE has moved' for summary judgment. For the reasons that follow, the Court DENIES Plaintiffs' motion, GRANTS the DOE's motion in part, and DENIES the DOE's motion in part.

## BACKGROUND

B.G., who has been classified as a student with autism, has attended Hawthorne Country Day School ("Hawthorne") since 2003. Due Process Hearing Tr. ("Tr.") 75. At Hawthorne, B.G. receives 6:1+2 education with a 1:1 crisis management paraprofessional. Dist. Ex. 5. Hawthorne provides B.G. with services including occupational therapy, speech-language therapy, and physical therapy. *Id.;* Tr. 75. Plaintiff has shown progress in all areas. Dist. Ex. 5; Tr. 75. Hawthorne also provides significant parent training and communication. Tr. 82, 113. Plaintiffs concede that Hawthorne is an appropriate school placement. Dist. Ex. 5 at 17; Pl.'s Mem. Law. Supp. Mot. Modified De Novo Review ("Pls.' Supp.") 1–2, 8.

B.G. has also received 15 hours of after-school, 1:1, Applied Behavioral Analysis ("ABA") services *per week since starting* Hawthorne, Tr. 78; Pls.-Appellants' Resp. Def.-Appellee's Local Rule 56.1 Stmt. Of Material Facts ("Pls.' 56.1") ¶ 10, and the discontinuance of these services is the subject of this litigation.

On May 13, 2008, the Committees on Special Education ("CSE"s) *met to decide* B.G.'s individualized education program ("IEP") for the 2008–2009 school year. SRO Decision 3. The CSE decided to maintain placement at Hawthorne, with all associated services, but the CSE decided to discontinue the after-school services. *Id.* On June 16, 2008, the CSE reconvened but again decided to discontinue after-school services. *Id.* at 4.

Plaintiffs filed a due process complaint, appealing the CSE decision to an Independent Hearing Officer ("IHO"). Pls.' 56.1 ¶¶ 10–11. Under the IDEA, a district that attempts to discontinue services is obligated to continue paying for those services during the pendency of litigation, 20 U.S.C. § 1415(j), and the DOE has complied with this provision. Pls.' 56.1 ¶ 10. At the due process hearing before the IHO, the DOE sought reimbursement for all money paid pursuant to pendency. *Id.* at 1110–14.

The IHO issued her decision on December 9, 2008. Hearing Officer's Finding of Facts and Decision ("IHO Decision") 15. The IHO found that B.G. had been offered a free appropriate public education ("FAPE") and denied Plaintiffs' request to continue funding after-school services. *Id.* The IHO also declined to order Plaintiffs to reimburse the DOE for money paid pursuant to pendency. *Id.*

Plaintiffs and the DOE cross appealed to the Office of State review. SRO Decision 1. On March 12, 2009, the State Review Officer ("SRO") affirmed the decision of the IHO. *Id.*

Plaintiffs and the DOE now cross appeal. The two questions before the Court are whether B.G. should be provided with 15 hours of after-school, 1:1, ABA services per week and whether the DOE should be reimbursed for money paid for these services pursuant to pendency.

## LEGAL STANDARD

### I. Standard of Review

On an IDEA-based appeal, the reviewing court "(i) shall receive the records of

the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. §§ 1415(i)(2)(C)(i)-(iii).

"Summary judgment appears to be the most pragmatic procedural mechanism in the Federal Rules for resolving IDEA actions,"[1] but in this context, "the inquiry ... is not directed to discerning whether there are disputed issues of fact." *Jennifer D. ex rel. Travis D. v. New York City Dep't of Educ.*, 550 F.Supp.2d 420, 429 n. 10 (S.D.N.Y.2008) (citation and quotations omitted). "[R]ather, it is a pragmatic procedural mechanism for reviewing administrative decisions." *T.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 252 (2d Cir.2009) (citation and quotations omitted).

■ "[T]he role of the federal courts in reviewing state educational decisions under the IDEA is circumscribed." *Gagliardo v. Arlington Centr. Sch. Dist.*, 489 F.3d 105, 112 (2d Cir.2007) (quotations omitted). While this Court must base its decision "on the preponderance of the evidence," it "must give 'due weight' to [the administrative] proceedings, mindful that the judiciary generally 'lack[s] the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy.'" *Gagliardo*, 489 F.3d at 112–13 (citations omitted).

Accordingly, district courts may not "substitute their own notions of sound educational policy for those of the school authorities [that] they review." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206, 102 S.Ct.

3034, 73 L.Ed.2d 690 (1982). "District courts therefore give 'substantial deference' to final administrative judgments implicating educational policies and practices." *Pinn ex rel. v. Harrison Cent. Sch. Dist.*, 473 F.Supp.2d 477, 482 (S.D.N.Y. 2007) (quoting *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 191 (2d Cir.2005)).

## II. Adequacy of an IEP

New York receives federal funds under the IDEA and charges local CSEs with the responsibility of formulating the IEPs. Each CSE is comprised of, among other people, the child's parent or guardian, the child's regular education teacher, the child's special education teacher, a school psychologist, and "an additional parent member of a student with a disability residing in the school district or a neighboring school district." 8 N.Y.C.R.R. 200.3(a)(1).

"In developing a particular child's IEP, a CSE is required to consider four factors: (1) academic achievement and learning characteristics, (2) social development, (3) physical development, and (4) managerial or behavioral needs." *Gagliardo*, 489 F.3d at 107–08 (citing 8 N.Y.C.R.R. 200.1(ww)(3)(i)).

"Under the IDEA, states receiving federal funds are required to provide 'all children with disabilities' a 'free appropriate public education.'" *Gagliardo*, 489 F.3d at 107 (quoting IDEA) (citation omitted). A FAPE must provide "special education and related services tailored to meet the unique needs of a particular child, and be reasonably calculated to enable the child to receive educational benefits." *Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d

---

**1.** The parties disagree over the procedural form that their motions should take: while Plaintiffs move for "modified de novo review," the DOE moves for summary judgment. District courts generally review IDEA-based appeals through the procedural mechanism of summary judgment. Plaintiffs' argument that the review should not give "due weight" to the prior administrative decisions but rather should be de *novo* is discussed *infra* at 360–61.

119, 122 (2d Cir.1998) (citations and quotations omitted). These services are administered through a written IEP, which must be updated at least annually. *Walczak,* 142 F.3d at 122.

■ In determining whether a student has been provided a FAPE, the Court must examine "(1) whether the state complied with the procedural requirements of IDEA, and (2) whether the challenged IEP was 'reasonably calculated to enable the child to receive educational benefits.' " *Walczak,* 142 F.3d at 129 (quoting *Rowley,* 458 U.S. at 206–07, 102 S.Ct. 3034).

■ The IDEA "does not articulate any specific level of educational benefits that must be provided through an IEP." *Walczak,* 142 F.3d at 130. "School districts are not required to 'furnish[ ] every special service necessary to maximize each handicapped child's potential.' " *T.P.,* 554 F.3d at 254 (quoting *Rowley,* 458 U.S. at 189, 102 S.Ct. 3034). The requirement that the IEP be "reasonably calculated" to provide educational benefits simply means that it must "provide such children with 'meaningful access' to education," and "must be 'likely to produce progress, not regression.' " *Frank G. v. Bd. of Educ.,* 459 F.3d 356, 364 (32d Cir.2006) (quoting *Walczak,* 142 F.3d at 130, 133 (citation and quotations omitted)).

## DISCUSSION

### I. Provision of After–School Services

### A. The IEP Was Reasonably Calculated to Enable the Child to Receive Educational Benefits

■ The main issue in this case is whether the IEP recommended by the CSE is "likely to produce progress, not regression," and thereby constitutes a FAPE, obviating the DOE's obligation to provide after-school services.[2] *Frank G.,* 459 F.3d at 364 (quotations omitted). Five witnesses testified at the IHO hearing. The IHO relied primarily on four[3]: (1) L.G., B.G.'s mother, (2) Kathleen Henry ("Henry"), B.G.'s ABA instructor, (3) Christine Montalto ("Montalto"), B.G.'s teacher at Hawthorne, (4) Virginia Wong ("Wong"), the Hawthorne Director. Documentary evidence in the record demonstrates B.G.'s educational progress at Hawthorne. There is no documentary evidence in the record with respect to the after-school services. The question therefore is whether the progress at Hawthorne could only be accomplished when coupled with the after-school services.

L.G., as B.G.'s mother, has extensive first-hand knowledge of B.G.'s educational development, but there is no evidence on the record that she has any expertise. Tr. 75–76, 81–82. She unambiguously testified that the inclusion of after-school services were necessary to ensure that an IEP was reasonably calculated to enable the child to receive educational benefits. *Id.* at 83, 86.

Henry, as the ABA instructor, has substantial first-hand knowledge of B.G.'s educational development and substantial expertise. *Id.* at 143–44, 146–49. Henry unambiguously testified that the inclusion of after-school services were necessary to ensure that an IEP was reasonably calculated to enable the child to receive educational benefits. *Id.* at 161, 166, 192.

However, the IHO credited the testimony of Montalto and Wong over the testimo-

---

**2.** Because we find that the IEP constituted a FAPE and therefore was not "inappropriate," analysis of whether the after-school services therein were appropriate or of "equitable considerations" is unnecessary. *Frank G.,* 459 F.3d at 363–64 (citations omitted).

**3.** The fifth witness was Marianne Diorio, the Hawthorne School Psychologist. She testified that the inclusion of after-school services were not necessary to ensure that an IEP was reasonably calculated to enable the child to receive educational benefits. *Id.* 331, 334–35.

ny of L.G. and Henry. IHO Decision at 14–15. We agree with the IHO's analysis and uphold the IHO Decision as upheld in the SRO Decision.

Montalto, as B.G.'s former day school teacher, has substantial first-hand knowledge of B.G.'s educational development and substantial expertise. *Id.* at 245–47, 250, 341. We credit the IHO's findings that Montalto's testimony supports the DOE's position. Hearing Officer's Finding of Facts and Decision 7–10. While Montalto at one point claimed that B.G. "needs" after-school services, Tr. 253, most of Montalto's testimony indicated that such services would be a "benefit" rather than a necessity for progress. *Id.* at 262–63, 267. In fact, Montalto explicitly conceded that B.G. could meet his short-term academic goals in a year or a year-and-a-half, subject to delays for behavioral issues, even without after-school services. *Id.* at 305–09.

Wong, as the Hawthorne Director, had limited first-hand knowledge of B.G.'s educational development; however, she has substantial expertise and has discussed B.G.'s development with those who have first-hand knowledge. *Id.* at 365–67, 376–82, 387–88, 399, 402–04. We also credit the IHO's findings that Wong's testimony supports the DOE's position. IHO Decision 7–10. While Wong noted that B.G.'s family "required additional support," Wong explicitly noted that Hawthorne met B.G.'s needs during the school day, Tr. 387, and there is no requirement that the DOE provide 24–hour behavioral assistance at home. Furthermore, Wong noted the extensive parent training provided by Hawthorne to help B.G.'s parents meet B.G.'s needs after the end of the school day. *Id.* at 371–81. When asked whether her testimony was that B.G.'s needs were met due to the supplemental after-school services, Wong answered, "No." *Id.* at 402.

While some areas, such as toilet training, may be difficult to address in school, Tr. 294, such limitations are not sufficient to demonstrate that the IEP is calculated to yield regression rather than progress, IHO Decision at 15 (citing *Application of a Child with a Disability*, Appeal No. 03–036), especially in light of the parent training conducted by Hawthorne to help deal with such issues. Tr. 371–81.

### B. Deference Owed to the IEP and SRO

■ Plaintiffs argue for *de novo* review rather than giving the SRO Decision "due weight," because the CSE and the SRO were biased in favor of the DOE. Plaintiffs argue that the second IEP team had "no intentions of truly 'reviewing' the decision to deny B.G. after school services." Pl.'s Supp. 8–9. Plaintiffs also argue that because the SRO lived with "a senior State Education Department attorney," he was biased in favor of the DOE and that his track record confirmed such bias. *Id.* at 1, 15. The DOE argues that, for various reasons, this evidence is inadmissible and that the SRO Decision should be accorded due weight. Def.'s Supp. 9–10.

Plaintiffs' allegations against the CSE are based on only subjective impressions and conclusory statements in affidavits, without further support. Such statements are insufficient to establish bias. *See Francis v. Coughlin*, 891 F.2d 43, 47 (2d Cir.1989); *Mirra v. United States*, 255 F.Supp. 570, 583 (S.D.N.Y.1966); *Goss v. Bernier*, 05 Civ. 9592(HB), 2007 U.S. Dist. LEXIS 3206, at *8–9 (S.D.N.Y. Jan. 18, 2007).

■ To the extent that Plaintiffs allege an improper relationship on the part of the SRO, such allegations are not supported by admissible evidence. The only evidence on the record is a newspaper article and an affidavit not based on personal knowledge. Both are blatantly inadmissible hearsay when used to prove the truth of

the matters referenced. *Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F.Supp.2d 206, 217 (S.D.N.Y.2007); Fed.R.Civ.P. 56(e)(1); *Flaherty v. Filardi*, No. 03 Civ. 2167(LTS), 2007 WL 163112, at *4, 2007 U.S. Dist. LEXIS 4595, at *11 (S.D.N.Y. Jan. 24, 2007).

The statistical evidence of past SRO bias is insufficient to sustain an argument against granting the administrative decisions due weight, as the IHO was never impugned and decided against Plaintiffs. *See generally* Pls.' Supp.; *see also* IHO Decision 15. The statistical evidence cited to show that the SRO was biased in favor of the DOE could just as easily be used to show that the IHOs are collectively biased against the DOE, because the data simply compares results reached by the SRO to results reached by the IHOs. Pl.'s Supp. 16–17. As a result, when, as here, the SRO and IHO both side with the DOE, Plaintiffs have supplied no evidence to oppose giving due weight at least to the underlying IHO decision.

## II. Reimbursement

■ Allowing the DOE to seek reimbursement of pendency payments from Plaintiffs would turn payments pursuant to pendency under 20 U.S.C. § 1415(j) into mere fee shifting. *See New York City Dep't of Educ. v. S.S.*, 09 Civ. 810(CM), 2010 WL 983719, at *9, 2010 U.S. Dist. LEXIS 25133, at *27 (March 17, 2010). Such a reading goes against the vast weight of binding and non-binding case law. *See Id.* at *14, 2010 U.S. Dist. LEXIS 25133 at *43 (squarely holding reimbursement inappropriate and collecting cases); *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 86 F.Supp.2d 354, 367 n. 9 (S.D.N.Y.2000) (finding reimbursement inappropriate in dictum); *Mackey v. Bd. Educ.*, 386 F.3d 158, 165–66 (2d Cir. 2004) (awarding pendency payments to parents after the parents ultimately lost the litigation and citing the dictum in *Mur-*

*phy* ); *Arlington Cent. Sch. Dist. v. L.P.*, 421 F.Supp.2d 692, 700–03 (S.D.N.Y.2006) (also awarding pendency payments to parents after the parents ultimately lost the litigation and citing both *Murphy* and *Mackey* ); *District of Columbia v. Jeppsen*, 468 F.Supp.2d 107, 112 (D.D.C.2006), remanded on other grounds, 514 F.3d 1287 (D.C.Cir.2008) (squarely denying reimbursement); *Aaron M. v. Yomtoob*, No. 00 Civ. 7732, 2003 WL 22836308, at *2–7, 2003 U.S. Dist. LEXIS 21252, at *7–22 (N.D.Ill. Nov. 25, 2003) (squarely denying reimbursement); *but see Doe v. Brookline Sch. Comm.*, 722 F.2d 910, 921 (1st Cir.1983) (arguing that reimbursement is appropriate for the prevailing party, though remanding first on other grounds).

### Conclusion

For the reasons set forth above, Plaintiffs' Motion for Summary Judgment is DENIED, and Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part. The Clerk of Court is directed to close the case.

SO ORDERED.