**R.B., on behalf of her minor child, L.B., Plaintiff,**

v.

**BOARD OF EDUCATION OF THE CITY OF NEW YORK, Board of Education of the Community School District 6, and Committee for Special Education for Community School District 6, Defendants.**

**No. 99 Civ. 3402(WHP).**

United States District Court, S.D. New York.

June 7, 2000.

Lori B. Leskin, Kimberly Branch, Kaye, Scholer, Fierman, Hays & Handler, LLP, New York City, Kim Sweet, New York Lawyers for the Public Interest, Inc., New York City, for plaintiff.

Michelle M. Buescher, Assistant Corporation Counsel, New York City, for defendants.

*MEMORANDUM AND ORDER*

PAULEY, District Judge.

Plaintiff R.B. filed this action on behalf of her minor child, L.B., against defendants Board of Education of the City of New York ("New York City Board"), Board of Education of the Community School District 6 ("Community Board"), and Committee for Special Education for Community School District 6 ("CSE") (collectively "defendants") alleging violations of the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("Section 1983"); the Rehabilitation Act of 1973, 29 U.S.C. § 792 *et seq.* ("Section 504"); the Individuals with Disabilities Education Act, 42 U.S.C. § 1400 *et seq.* ("IDEA"); the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"); New York Education Law § 4401 *et seq.*; and New York State Constitution Article XI, § 1. Defendants move to dismiss each of plaintiff's claims pursuant to Fed. R.Civ.P. 12(b)(6) on the following grounds: (1) plaintiff has not exhausted her administrative remedies; (2) money damages are not available under Section 1983 for violations of the IDEA; (3) plaintiff has not pled sufficient facts to state a claim for municipal liability under Section 1983; and (4) plaintiff has failed to allege bad faith or gross misjudgment for purposes of her Section 504 and ADA claims. For the reasons set forth below, defendants' motion to dismiss is denied in its entirety.

*Factual Background*

The following facts are alleged in plaintiff's complaint and assumed to be true for purposes of defendants' motion to dismiss. R.B. is the parent and natural guardian of L.B., a minor, on whose behalf she has filed this action. L.B. is a fourteen year-old student residing within Community School District 6 in New York City. (Compl.¶¶ 8, 9) In 1993, L.B. was tested and thereafter classified as speech impaired[1] and found to meet the criteria for

a disabled child under the IDEA. *See* 20 U.S.C. § 1401(3). R.B. did not and does not contest this classification. (Compl.¶ 12)

Under state and federal statutes, the CSE is required to develop, at least annually, an Individualized Education Program ("IEP") for each child classified as disabled in its school district. *See* 20 U.S.C. § 1414(d); N.Y.Educ.Law § 4402. The IEP must state the child's present functioning level, articulate short and long-term goals and objectives, and identify the special education programs and related services (such as speech, physical and occupational therapy and counseling services) that the child is entitled to receive. *See* 20 U.S.C. § 1414(d)(1)(A).

In August 1995, CSE developed an IEP for L.B.'s 1995–96 school year. The 1995 IEP provided that L.B. would participate in the Modified Instruction Services I ("MIS–I") program, which would afford him both special education instruction in a self-contained class and opportunities for inclusion in the regular education classroom. The IEP also provided that L.B. would receive speech and language therapy and individual counseling. (Compl.¶ 15)

During the 1995–96 school year, L.B. became increasingly aggressive in class. On February 6, 1996, L.B.'s teacher recommended that CSE substantially change L.B.'s IEP because she believed L.B. needed a more structured and restrictive environment than that provided by the MIS–I class. (Compl.¶ 16) Almost two months later, in April 1996, CSE performed psychological and educational evaluations on L.B. in accord with his teacher's recommendation. (Compl.¶ 17)

On May 16, 1996, CSE reconvened to discuss L.B.'s evaluations and to develop an IEP for the 1996–97 school year. CSE reclassified L.B. as "emotionally dis-

---

1. The IDEA regulations define speech impairment as "a communication disorder, such as stuttering, impaired articulation, a language impairment, or a voice impairment, that adversely affects a child's educational performance." 34 C.F.R. § 300.7(c)(11).

turbed"[2] and concluded that no available public special education program would be appropriate for L.B. As a result, L.B.'s 1996 IEP provided that he would attend a private educational facility at public expense beginning in September 1996. The 1996 IEP made defendants responsible for securing such placement. R.B. participated in the development of the 1996 IEP and consented to it. (Compl.¶¶ 18, 19)

Defendants failed to contact any private schools to arrange for L.B.'s placement. (Compl.¶ 21) During July and August 1996, R.B. called employees of CSE and of the New York City Board to determine the status of L.B.'s placement, but her calls were not returned. (Compl.¶ 22) When L.B. planned to return to school in September 1996, R.B. was told that there was no private educational placement for her son. (Compl.¶ 23)

In late September 1996, after the academic school year had commenced, defendants placed L.B. in a Modified Instructional Services II ("MIS–II") program at a public school pending placement in a private facility. However, in drafting the 1996 IEP only a few months earlier, CSE had rejected the MIS–II placement as inappropriate for L.B. (Compl.¶ 24) After attending only four or five days of the MIS–II program, L.B. was suspended.

On October 31, 1996, CSE reconvened to develop an Interim Service Plan ("ISP") as a temporary measure until L.B. could be placed in a private facility. The ISP provided for two hours of home instruction per day, speech and language therapy, and individualized counseling. R.B. consented to the ISP as a temporary measure only. (Compl.¶ 27)

Defendants failed to provide services consistent with the ISP. (Compl.¶ 28) As a result, R.B. requested an impartial hearing pursuant to the IDEA. See 20 U.S.C. ¶ 1415(b)(2). At a January 10, 1997 hearing, CSE admitted that it had not acted properly. (Compl.¶ 31) The hearing officer found that defendants' conduct was "tantamount to gross neglect" and had adversely impacted L.B.'s "chance of getting any kind of satisfactory education." (Compl.¶ 30) The hearing officer ordered: (1) that the New York City Board pursue placement of L.B. in a private facility in accord with his 1996 IEP; (2) that the home instruction set forth in the ISP be implemented immediately and increased to four hours per day; and (3) that authorization for provision of related services be issued to L.B. for speech and language therapy and counseling services. (Compl.¶ 32)

Defendants failed to implement the hearing officer's order. R.B. repeatedly called defendants to arrange for home instruction and provision of related services; defendants did not return her calls or address her concerns. (Compl.¶ 33) On January 28, 1997, almost three weeks after the hearing, L.B. finally began receiving home instruction. (Compl.¶ 35) On March 14, 1997, and after intervention of counsel on L.B.'s behalf, defendants authorized L.B. to receive the related services mandated by the hearing officer. (Compl.¶ 36) Thus, except for the four or five days prior to his suspension, L.B. was excluded from the classroom setting for the entire 1996–97 school year and only received at-home ser-

---

**2.** Under the IDEA regulations, a child is emotionally disturbed if he or she exhibits one or more of the following conditions over a long period of time and to a degree that adversely affects the child's educational performance:

(A) An inability to learn that cannot be explained by intellectual, sensory, or health factors.

(B) An inability to build or maintain satisfactory interpersonal relationships with peers and teachers.

(C) Inappropriate types of behavior or feelings under normal circumstances.

(D) A general pervasive mood of unhappiness or depression.

(E) A tendency to develop physical symptoms or fears associated with personal or school problems.

34 C.F.R. § 300.7(c)(4).

vices during the later portion of the 1996–97 school year.

Plaintiff contends that L.B. became a recluse, refused to participate in social activities outside his house, gained substantial weight, and regressed educationally and emotionally as a result of his total exclusion from school caused by defendants' failure to seek a private placement for him in accord with his 1996 IEP. Plaintiff alleges that as a direct result of defendants' actions, L.B. has suffered "severe permanent injury and emotional distress." (Compl.¶ 38)

## Discussion

### I. Applicable Standards

In resolving a motion to dismiss, the pleadings and affidavits must be construed in favor of the plaintiff, and all doubts should be resolved in the plaintiff's favor and against the defendants. *See Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998); *Cohen v. Koenig*, 25 F.3d 1168, 1171–72 (2d Cir.1994). A complaint may not be dismissed under Fed.R.Civ.P. 12(b)(6) unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Black Radio Network, Inc. v. NYNEX Corp.*, 44 F.Supp.2d 565, 572 (S.D.N.Y.1999) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). The issue before the court is not whether plaintiffs will ultimately prevail but whether plaintiffs are entitled to offer evidence in support of their claims. *See Black Radio*, 44 F.Supp.2d at 572.

### II. Exhaustion of Administrative Remedies

■ Plaintiff brings this action on behalf of her minor son seeking damages under Section 1983, Section 504, the ADA, the IDEA, and various state laws. Parents of children with disabilities are not limited to suing local educational authorities under the IDEA and may pursue actions under other laws, including the ADA and Section 504. However, "when parents choose to file suit under another law that protects the rights of handicapped children—and the suit could have been filed under the [IDEA]—they are first required to exhaust the [IDEA's] remedies to the same extent as if the suit had been filed originally under the [IDEA's] provisions." *Mrs. W. v. Tirozzi*, 832 F.2d 748, 756 (2d Cir.1987); *see also* 20 U.S.C. § 1415(*l*) [3].

■ In order to exhaust her IDEA administrative remedies, a plaintiff must request an impartial due process hearing before the state or local educational agency, *see* 20 U.S.C. § 1415(f), and, if the hearing is held before a local educational agency, appeal the local agency's decision to the state educational agency, *see* 20 U.S.C. § 1415(g). New York provides parents with the opportunity to have an impartial due process hearing to challenge a decision made by CSE and to appeal that decision to the State Review Officer. *See* N.Y.Educ.Law § 4404. Here, plaintiff had a hearing before the local educational agency but did not appeal the hearing officer's decision to the State Review Officer. Defendants therefore contend that this Court does not have jurisdiction over plaintiff's claims. *See* 20 U.S.C. § 1415(i)(2).

■ Plaintiff was not required to appeal the hearing officer's decision. Only a "party aggrieved by the findings and decision rendered in such a hearing may appeal such findings and decision to the State educational agency." 20 U.S.C. § 1415(g); *see also Quackenbush v. Johnson City Sch. Dist.*, 716 F.2d 141, 147 (2d Cir.1983). Viewing the evidence in a light

---

**3.** The IDEA was revised on June 4, 1997 by Pub.L. 105–17, effective July 1, 1998. This memorandum and order will refer to the revised statute, except where there are substantive differences between the old and revised statutes. For example, 20 U.S.C. § 1415(*l*) was previously designated as 20 U.S.C. § 1415(f), and there are no substantive differences between the two provisions.

most favorable to plaintiff, she was not "aggrieved" by the decision of the hearing officer. She consented to the classification of L.B. as emotionally disturbed, to L.B.'s placement in private school pursuant to his 1996 IEP, and to L.B.'s ISP regime of home schooling and therapy as an interim measure. Plaintiff prevailed at the impartial hearing, where the officer affirmed the classification and placement of L.B. in accord with his 1996 IEP and ISP. Thus, there was nothing for plaintiff to appeal.

Defendants contend that allegations in plaintiff's complaint show that she did not entirely agree with the decision of the hearing officer. As this Court reads the complaint, and as plaintiff clarified at oral argument, plaintiff was displeased with the school's failure to search for a private school placement for L.B., but consented to the ISP as a temporary measure because she thought it was the best solution given the circumstances. (Oct. 22, 1999 Hearing Tr. at 10–12) Plaintiff requested the hearing in order to force defendants to honor their obligations under the ISP and to continue searching for a private school placement for L.B. The hearing officer granted this relief to plaintiff.

Under these circumstances, exhaustion of administrative remedies was not only unnecessary, but also would have been pointless. Accordingly, this Court has jurisdiction over this action.[4]

III. *Plaintiff's Section 1983 Claims for Violations of the IDEA*

A. *Availability of Money Damages*

■ Defendants move to dismiss plaintiff's Section 1983 claims based on violations of the IDEA because plaintiff is seeking compensatory and punitive damages. Whether money damages are available in such Section 1983 actions is not settled.

Defendants rely on a line of cases holding that money damages are unavailable in Section 1983 actions predicated on violations of the IDEA. *See, e.g., Sellers v. School Bd.,* 141 F.3d 524 (4th Cir.), *cert. denied* 525 U.S. 871, 119 S.Ct. 168, 142 L.Ed.2d 137 (1998); *Heidemann v. Rother,* 84 F.3d 1021 (8th Cir.1996); *Crocker v. Tennessee Secondary Sch. Athletic Ass'n,* 980 F.2d 382 (6th Cir.1992); *Andrew S. v. School Comm.,* 59 F.Supp.2d 237 (D.Mass. 1999); *see also Charlie F. v. Board of Educ.,* 98 F.3d 989, 991 (7th Cir.1996) (holding money damages unavailable under the IDEA directly but not deciding whether they are available in Section 1983 actions based on violations of the IDEA). In *Crocker,* the Sixth Circuit addressed the issue by first determining whether money damages should be available under the IDEA itself. *See Crocker,* 980 F.2d at 386. The *Crocker* Court determined that an award of "general damages for emotional injury or injury to a dignitary interest" is not "appropriate" relief under the IDEA. *See Crocker,* 980 F.2d at 386. The court held that because the student could not recover damages under the Education of the Handicapped Act ("EHA"),[5] and because Section 1983 merely secures the federally protected rights a plaintiff already holds, the student could not recover damages under Section 1983. *See Crocker,* 980 F.2d at 387; *accord Heidemann,* 84 F.3d at 1032 (adopting the rationale of *Crocker* ).

The Fourth Circuit also recently held that money damages are not available in Section 1983 actions for violations of the IDEA. *See Sellers,* 141 F.3d at 526–28. The *Sellers* Court based its decision on policy concerns:

Compensatory or punitive damages would transform IDEA into a remedy

---

**4.** Because this Court finds that plaintiff had no obligation to appeal the decision of the hearing officer under 20 U.S.C. § 1415(g), this Court need not reach the issue of whether plaintiff can avoid the exhaustion requirements of the IDEA by only seeking relief that

is unavailable under the IDEA itself, such as money damages.

**5.** Prior to the 1996 amendments, the IDEA was entitled the Education of the Handicapped Act.

for pain and suffering, emotional distress, and other consequential damages caused by the lack of a free appropriate public education. Such a result would be inconsistent with the structure of the statute, which so strongly favors the provision of and, where appropriate, the restoration of educational rights. *Sellers,* 141 F.3d at 527. The *Sellers* court also expressed a concern that if money damages were allowed, there would be "acute problems of measurability." *Sellers,* 141 F.3d at 528. It noted that because the IDEA lacks standards by which to evaluate money damages, "the range of possible monetary awards would be vast, particularly in cases seeking recovery for less tangible injuries such as emotional distress of pain and suffering." *Sellers,* 141 F.3d at 528.

Although this Court is sensitive to the policy considerations of these courts, the Supreme Court's decision in *Franklin v. Gwinnett County Pub. Schs.,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), provides a compelling rationale for allowing money damages under Section 1983 for violations of the IDEA. In *Franklin,* the Court held that there is an implied right of action for money damages under Section 1983 pursuant to Title IX of the Education Amendment of 1982. *See Franklin,* 503 U.S. at 71–76, 112 S.Ct. at 1035–38. In holding that money damages were available, the Court began with the presumption that "absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute." *Franklin,* 503 U.S. at 70–71, 112 S.Ct. at 1035. The issue before this Court—whether money damages are available under Section 1983 for violations of the IDEA—is similar to that before the Supreme Court in *Franklin.* Thus, this Court begins with the *Franklin* presumption and rejects the analysis of those courts that fail to do so. *Accord, e.g., W.B. v. Matula,* 67 F.3d 484 (3rd Cir.1995); *L.C.*

*v. Utah State Bd. of Educ.,* 57 F.Supp.2d 1214 (D.Utah 1999); *Cappillino v. Hyde Park Cent. Sch. Dist.,* 40 F.Supp.2d 513 (S.D.N.Y.1999); *Padilla v. School Dist. No. 1,* 35 F.Supp.2d 1260 (D.Colo.1999); *Emma C. v. Eastin,* 985 F.Supp. 940 (N.D.Cal.1997); *Walker v. District of Columbia,* 969 F.Supp. 794 (D.D.C.1997); *see also Ridgewood Bd. of Educ. v. N.E.,* 172 F.3d 238, 252 (3d Cir.1999) (reaffirming *Matula*'s holding that the IDEA is actionable under Section 1983). With the exception of *Andrew S.,* 59 F.Supp.2d at 241–47, and a footnote in *Sellers,* 141 F.3d at 527 n. 3, the courts holding money damages are not available under Section 1983 for violations of the IDEA "wholly ignore[ ] the proper analytical starting point for deciding this issue as set forth in *Franklin v. Gwinnett County.*" *See Padilla,* 35 F.Supp.2d at 1266 n. 1.

Upon examining the plain language and legislative history of the IDEA, this Court finds that there is no "clear direction" from Congress sufficient to rebut the presumption that all relief is available. In 1984, the Supreme Court held that, based on the comprehensive remedial scheme of the EHA, Congress intended to foreclose private enforcement of special education rights through laws such as Section 504 and Section 1983. *See Smith v. Robinson,* 468 U.S. 992, 1012–13, 104 S.Ct. 3457, 3468–69, 82 L.Ed.2d 746 (1984). In response, Congress amended the EHA to add 20 U.S.C. § 1415(f), currently 20 U.S.C. § 1415(*l*) under the IDEA, clarifying that the IDEA does not "restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans' with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities...." 20 U.S.C. § 1415(*l*). Legislative history also reveals that Congress intended the amendment to govern actions under Section 1983. *See Matula,* 67 F.3d at 494 (citing H.R.Conf. Rep. No. 99–687, 99th Cong., 2d Sess. (1986); 1986 U.S.C.C.A.N. 1807, 1809).

Thus, this Court finds that nothing in the IDEA precludes a claim for money damages under Section 1983 and that, in fact, the IDEA expressly contemplates such claims.[6] However, it is worth cautioning that the issue before the Court at this juncture is whether an award of money damages is precluded as a matter of law, not whether money damages would be appropriate relief under the circumstances of this action. This latter issue may be addressed, if appropriate, after discovery is completed.

### B. *Pleading Standard*

Defendants contend that even if this Court determines it appropriate to hear plaintiff's Section 1983 claims, they must be dismissed because the complaint fails to establish that an official policy, practice, or custom caused the violations of federal law. In her complaint, plaintiff alleges that defendants' actions "were taken pursuant to a policy or custom to deprive students with a disability, including L.B., of a free appropriate public education" and "were the result of official inaction by the Defendants reflecting deliberate indifference toward the deprivation of federal rights." (Compl.¶ 53)

■ Under certain circumstances, a municipality's failure to act can constitute a policy and thus give rise to liability under Section 1983. *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 1204–05, 103 L.Ed.2d 412 (1989); *Walker v. City of New York,* 974 F.2d 293, 297–98 (2d Cir.1992). In order to be actionable under Section 1983, the failure to act must rise to the level of deliberate indifference. *See City of Canton,* 489 U.S. at 389, 109 S.Ct. at 1205; *Walker,* 974 F.2d at 297. Plaintiffs need not show that the munici-

pality had an explicitly stated rule or regulation; instead an inference that such a policy existed may be drawn from circumstantial evidence. *See Babi–Ali v. City of New York,* 979 F.Supp. 268, 273 (S.D.N.Y. 1997) (citing *Covington v. City of New York,* 916 F.Supp. 282, 287 (S.D.N.Y. 1996)).

■ The Supreme Court has held that there is no heightened pleading standard for civil rights actions alleging municipal liability under Section 1983. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993). The *Leatherman* Court rejected the argument that "a plaintiff must do more than plead a single instance of misconduct" and held that a complaint need only include "a short plain statement of the claim showing that the pleader is entitled to relief." *Leatherman,* 507 U.S. at 167–68, 113 S.Ct. at 1162–63 (citing Fed. R.Civ.P. 8(a)(2)). To the extent that the Second Circuit endorsed a higher pleading standard prior to *Leatherman,* that standard is no longer applicable.[7] *See, e.g., Javid v. Scott,* 913 F.Supp. 223, 230 (S.D.N.Y.1996); *Simpkins v. Bellevue Hosp.,* 832 F.Supp. 69, 73–74 (S.D.N.Y. 1993). Under the liberal pleading standards of Fed.R.Civ.P. 8(a)(2), plaintiff has sufficiently alleged municipal liability in her Section 1983 claims.

Accordingly, defendants' motion to dismiss plaintiff's Section 1983 claims is denied.

### IV. *Plaintiff's Section 504 and ADA Claims*

A parent of a disabled child may file an action for violation of the child's education-

---

6. Although the Second Circuit has not reached this precise issue post-*Franklin,* the Second Circuit held prior to *Franklin* that claims for money damages under Section 1983 for violations of the EHA were actionable. *See Quackenbush,* 716 F.2d at 147–49.

7. To the extent defendants suggest this Court should rely on the Second Circuit's unpublished decision in *Wilson v. 103RD Precinct,* 182 F.3d 902, 1999 WL 494868 (1999), this Court may not do so. *See* U.S.Ct. of App.2d Cir.Rules § 0.23 (summary orders "shall not be cited or otherwise used in unrelated cases before this or any other court").

al rights under the ADA or Section 504. *See* 20 U.S.C. § 1415(*l*). Section 504 and the ADA prohibit discrimination based on disability. *See* 29 U.S.C. § 794 (Section 504 provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal assistance"); 42 U.S.C. § 12132 (ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity"). The regulations of Section 504 are similar to those of the IDEA and place parallel requirements on schools to provide special education and related services. *See* 34 C.F.R. §§ 104.33–104.37; *see also Matula*, 67 F.3d at 492–93. There are no specific ADA regulations concerning education of disabled children. However, the ADA has been interpreted coextensively with Section 504 special education requirements. *See* 28 C.F.R. § 35.103(a) (the ADA "shall not be construed to apply a lesser standard than the standards applied under title V of the Rehabilitation Act of 1973").

The requirements for stating a claim under the ADA are nearly identical to those under Section 504. *See Burgess v. Goord*, No. 98 Civ.2077(SAS), 1999 WL 33458 (S.D.N.Y. Jan.26, 1999); *Clarkson v. Coughlin*, 898 F.Supp. 1019, 1037 (S.D.N.Y.1995). In the special education context, courts have held that a plaintiff must demonstrate more than an incorrect evaluation or substantively faulty IEP to establish liability; a plaintiff must show that defendants acted with bad faith or gross misjudgment. *See Wenger v. Canastota Central Sch. Dist.*, 979 F.Supp. 147, 152 (N.D.N.Y.1997), *aff'd mem.*, 208 F.3d 204 (2d Cir.2000); *Pandazides v. Virginia Bd. of Educ.*, 13 F.3d 823, 830 (4th Cir.1994); *Monahan v. Nebraska*, 687 F.2d 1164, 1170–71 (8th Cir.1982); *Walker*,

969 F.Supp. at 797. However, plaintiffs need not show defendants acted with animosity or ill will. *See Bartlett v. New York State Bd. of Law Exam'rs*, 156 F.3d 321, 331 (2d Cir.1998), *vacated on other grounds,* —— U.S. ——, 119 S.Ct. 2388, 144 L.Ed.2d 790 (1999); *Bravin v. Mount Sinai Med. Ctr.*, 58 F.Supp.2d 269, 273 (S.D.N.Y.1999).

■ Viewing the evidence in a light most favorable to plaintiff, she has sufficiently pled the requisite bad faith or gross misjudgment necessary for her ADA and Section 504 claims against defendants. Plaintiff alleges that "defendants have intentionally, recklessly, and willfully denied [L.B.] of his right to and the benefits of a free appropriate public education" and that defendants' "actions were taken in bad faith and with gross misjudgment." (Compl.¶ 46) Plaintiff also contends that "defendants have intentionally and wrongfully and in bad faith excluded and discriminated against [L.B.] in his participation in educational services and activities." (Compl.¶ 47)

Plaintiff has alleged sufficient facts to support her allegations of bad faith and gross misjudgment, including defendants' failure to take any action to implement L.B.'s 1996 IEP from May to September 1996; defendants' failure to promptly develop an ISP after L.B. was suspended; defendants' failure to timely implement the ISP; the hearing officer's finding that defendants' conduct was tantamount to "gross neglect, incompetence and ineptitude which has had a very serious ... adverse impact on the student's chance at getting any kind of satisfactory education;" and defendants' failure to timely implement the order of the hearing officer. (Compl. ¶¶ 21–23; 27–30, 33–36).

Accordingly, defendants' motion to dismiss plaintiff's ADA and Section 504 claims is denied.

### Conclusion

For the reasons set forth above, defendants' motion to dismiss is denied in its

entirety. The parties are directed to appear for a pretrial conference on July 7, 2000 at 12:00 p.m. in Courtroom 618.

SO ORDERED.