and against defendant United States of America in the amount of $250,000.00.

D.N., individually and on behalf of G.N., Plaintiffs,

v.

The NEW YORK CITY DEPARTMENT OF EDUCATION and Dennis Walcott, in his official capacity as the Chancellor of the New York City Department of Education, Defendants.

No. 11 Civ. 9223(NRB).

United States District Court, S.D. New York.

Dec. 10, 2012.

Harold Jeffrey Marcus, Law Offices of H. Jeffrey Marcus, P.C., Williamsville, NY, Steven Laurence Goldstein, The Law Offices of Steven L. Goldstein, New York, NY, for Plaintiffs.

Gloria Mihee Yi, NYC Law Department, New York, NY, for Defendants.

## MEMORANDUM AND ORDER

NAOMI REICE BUCHWALD, District Judge.

Plaintiff D.N. (the "Parent"), individually and on behalf of her minor son, G.N. (the "Student"), brings this action against the New York City Department of Education (the "Department") and its Chancellor, Dennis Walcott (collectively, the "defendants"), pursuant to the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. § 1400 et seq. The Parent seeks review of an administrative decision of the State Review Officer (the "SRO") annulling the decision of the Impartial Hearing Officer (the "IHO") and vacating the IHO's award of tuition reimbursement for the Student's unilateral placement at the Rebecca School during the 2010–11 school year. Presently before the Court are the parties' cross-motions for summary judgment. For the reasons set forth below, we deny the parties' motions and remand this matter to the SRO.

## BACKGROUND

### I. Legal Framework

A state that receives federal funding under the IDEA must provide a free appropriate public education ("FAPE") to disabled children. 20 U.S.C. § 1412(a)(1)(A). To ensure that each qualifying child receives a FAPE, the state must create an individualized education program ("IEP"), which serves as the "centerpiece of the IDEA'S education delivery system." T.Y. v. N.Y.C. Dep't of Educ., 584 F.3d 412, 415 (2d Cir.2009) (internal quotation marks omitted); see also 20 U.S.C. § 1414(d). The IEP is a written statement, developed annually, that "sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." R.E. v. N.Y.C. Dep't of Educ., 694 F.3d 167, 175 (2d Cir.2012) (internal quotation marks omitted).

In New York, the responsibility for developing an IEP rests with a Committee on Special Education ("CSE"). N.Y. Educ. Law § 4402(1)(b)(1); 8 N.Y.C.R.R. § 200.3(a)(1). The CSE consists of the student's parent or guardian, the student's regular and special education teachers, a school psychologist, and others. 8 N.Y.C.R.R. § 200.3(a)(1); see also T.Y., 584 F.3d at 415 (noting that an IEP is "the result of collaborations between parents, educators, and representatives of the school district") (internal quotation marks omitted). Together, these individuals must examine the student's "specific needs" and develop an IEP that is "reasonably calculated to enable the child to receive educational benefits." R.E., 694 F.3d at 175 (internal quotation marks omitted).

If a parent believes that the state has failed to offer the student a FAPE, the parent may unilaterally place the student in a private school and "seek reimbursement from the school district for expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP." M.H. v. N.Y.C. Dep't of Educ., 685 F.3d 217, 246 (2d Cir.2012) (internal quotation marks omitted). To secure reimbursement, the parent must file a "due process complaint" and adjudicate the claim before an IHO. 20 U.S.C. § 1415(b)(8); N.Y. Educ. Law § 4404(1). A party aggrieved by the IHO's decision may appeal to an SRO, 20 U.S.C. § 1415(g)(1); 8 N.Y.C.R.R. § 200.5(k)(1), and either party aggrieved by the SRO's ruling may file a civil action in state or federal court, 20 U.S.C. § 1415(i)(2)(A).

## II. *Facts*[1]

### A. Background

The Student is an autistic child born in 2001. (Ex. 5 at 1.) As a result of his disability, the Student presents with global developmental delays and is primarily non-verbal; he communicates using word approximations, gestures, and an augmentative and alternative communication device. (*Id.* at 3; Ex. 10 at 8.) The Student also has significant sensory needs and engages in self-injurious behaviors. (Ex. 10 at 5–7, 11–12.) To remain regulated, the Student requires frequent sensory input, such as the use of swings and/or other sensory regulating devices. (*Id.* at 6; Ex. 5 at 18.)

Since September 2006, the Student has attended the Rebecca School, a non-public day school for children with neuro-developmental disabilities.[2] (Tr. at 757.) During the 2009–10 school year, the Student attended a class of eight students to one head teacher and three assistant teachers. (Ex. 10 at 1.) In addition, the Student received occupational therapy, physical therapy, speech/language therapy, music therapy, and adapted physical education. (*Id.*)

### B. The IEP and Recommended Placement

On January 12, 2010, a CSE convened to develop the Student's IEP for the 2010–11 school year. (Ex. 5 at 1.) The resultant IEP offered the Student a twelve-month placement in a class consisting of six students to one teacher and one classroom paraprofessional ("6:1:1"), with the additional support of a crisis paraprofessional. (*Id.* at 1, 17.) The IEP also offered the Student related services of occupational therapy, physical therapy, speech/language therapy, and counseling. (*Id.* at 17.) In addition, the IEP provided a behavior in-tervention plan ("BIP") to address the Student's aggressive, self-injurious, and other interfering behaviors. (*Id.* at 18.)

On June 15, 2010, the Department issued a Final Notice of Recommendation for the Student to attend Public School 94–M at the Children's Workshop ("P94"). (Ex. 9.) The following day, the Parent sent a letter to the Department, notifying it that she intended to unilaterally place the Student in the Rebecca School and seek reimbursement. (Ex. H at 1.) After visiting P94 with a social worker from the Rebecca School (Ex. CC), the Parent signed an enrollment contract with the Rebecca School and placed a deposit on the Student's tuition for the 2010–11 school year. (Ex. S at 2; Ex. Y at 1.) By a letter dated August 16, 2010, the Parent reiterated her intent to seek "reimbursement and/or payment" for the Student's unilateral placement. (Ex. F at 2.)

### C. The Due Process Complaint and the IHO's Decision

On September 13, 2010, the Parent requested an impartial hearing to challenge the procedural sufficiency of the IEP, as well as the substantive adequacy of the Department's proposed placement at P94. (Ex. A.) In her due process complaint, the Parent claimed that the IEP was procedurally inadequate because, *inter alia*, (i) the Department predetermined the Student's placement in a 6:1:1 classroom without providing the Parent a meaningful opportunity to participate in the decision-making process; (ii) the Department failed to conduct a functional behavioral assessment ("FBA"), resulting in an improper BIP; and (iii) the IEP did not provide, among other things, specific and measurable goals, transition support services, parent counseling, or an updated statement of

---

1. The factual and procedural background is derived from the administrative record.

2. Each year, the Department has paid the Student's tuition. (Tr. at 758–59.)

the Student's present levels of educational performance. (*Id.* at 5, 7–13.) With respect to the proposed placement, the Parent alleged, *inter alia,* that the placement did not (i) address the Student's sensory needs; (ii) provide the Student with an appropriate functional grouping; or (iii) provide sufficient adult supervision. (*Id.* at 12–13, 15.)

IHO Theresa R. Joyner held a hearing over the course of seven non-consecutive days in 2010 and 2011. By a decision dated June 10, 2011, the IHO found that the Department failed to offer the Student a FAPE during the 2 010–11 school year, and the IHO ordered reimbursement for the Student's unilateral placement at the Rebecca School. (IHO Decision at 22–23.) The IHO rested her decision on two of the Parent's claims. First, the IHO found that the Department predetermined the Student's placement without according "due consideration" to the Parent's opinions. (*Id.* at 21.) Second, the IHO found that the proposed placement was "fatal[ly] flawed" insofar as it did not provide swings or other "appropriate sensory equipment." (*Id.*) In rendering her decision, the IHO did not address any of the Parent's additional claims, presumably because it was unnecessary for her to do so.

## D. The Appeal to the SRO

The Department appealed the IHO's decision by a petition dated July 13, 2011. In the petition, the Department challenged the IHO's findings. (Verified Pet. at ¶¶ 33–36.) In addition, the Department urged the SRO to dismiss any "remaining claims" that "the IHO did not address."[3] (*Id.* at ¶ 37.) The Parent did not cross-appeal the IHO's decision. However, in her answer to the Department's petition, the Parent asserted many of the claims

that the IHO did not reach. (Verified Answer at ¶¶ 43, 45, 48, 52, 54, 57, 81.)

On August 29, 2011, SRO Justyn P. Bates issued a decision annulling the IHO's finding that the Department failed to offer the Student a FAPE and vacating the IHO's award of tuition reimbursement. (SRO Decision at 20.) According to the SRO, the record did not support the IHO's conclusions that the Department predetermined the recommended placement, ignored the Parent's opinions, or failed to offer the Student a placement that accommodated his sensory needs. (*Id.* at 8–11.) Although "unaddressed by the [IHO]" and "unappealed by the [P]arent," the SRO also found that the IEP accommodated the Student's sensory needs. (*Id.* at 11.) However, the SRO declined to consider the Parent's other outstanding claims. (*Id.* at 6 n. 5.) The SRO reasoned that any portion of the IHO's decision that the Parent did not cross-appeal—including the IHO's decision not to reach a particular issue—was "final and binding upon the parties." (*Id.*)

## E. The Instant Action

On December 16, 2011, the Parent instituted this action seeking reversal of the SRO's decision. In her pleadings and memoranda, the Parent pursues, *inter alia,* the claims that the IHO and SRO declined to address.

## DISCUSSION

## I. *Legal Standards*

 In the context of the IDEA, a motion for summary judgment "involves more than looking into disputed issues of fact; rather, it is a pragmatic procedural mechanism for reviewing administrative decisions." *R.E.,* 694 F.3d at 184 (internal

---

3. The Department made specific reference to the Parent's claims regarding the Department's failure to conduct an FBA and the

IEP's alleged omission of specific and measurable goals. (Petition at ¶¶ 37–38.)

quotation marks omitted). When deciding such a motion, a district court must "engage in an independent review of the administrative record and make a determination based on a preponderance of the evidence." *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112 (2d Cir.2007) (internal quotation marks omitted); *see also T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, No. 11 Civ. 6459(VB), 900 F.Supp.2d 344, 351, 2012 WL 4714796, at *6 (S.D.N.Y. Sept. 26, 2012) ("The standard of review for IDEA cases has been characterized as modified *de novo*.") (internal quotation marks omitted).

■ Nevertheless, a district court's role is "circumscribed," *R.E.*, 694 F.3d at 189 (internal quotation marks omitted), and the court cannot "substitute [its] own notions of sound educational policy for those of the school authorities [it] review[s]," *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 215 (2d Cir.2012) (internal quotation marks omitted); *see also Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 380–81 (2d Cir.2003) (noting that the Second Circuit "strictly limit[s] judicial review of state administrative decisions"). To the contrary, the court "must give due weight to the administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *T.Y.*, 584 F.3d at 417 (internal quotation marks omitted); *see also M.H.*, 685 F.3d at 244 (emphasizing that "the purpose of the IDEA is to provide funding to states so that *they* can provide a decent education for disabled students").

In determining whether an IEP complies with the IDEA, a court engages in a two-part inquiry. *R.E.*, 694 F.3d at 189–90. First, the court examines "whether there were procedural violations of the IDEA, namely, whether the state has complied with the procedures set forth in the IDEA." *Id.* at 190 (internal quotation marks omitted). Second, the court considers "whether the IEP was substantively adequate, namely, whether it was reasonably calculated to enable the child to receive educational benefits." *Id.* (internal quotation marks and alteration omitted). If the court answers either of these questions in the affirmative, "the court then asks whether the private schooling obtained by the parents for the child is appropriate to the child's needs." *M.H.*, 685 F.3d at 245 (internal quotation marks and alteration omitted).

## II. *Application*

As a threshold and, ultimately, dispositive matter, we must determine whether the Parent's failure to cross-appeal the IHO's decision precludes this Court from considering claims that were properly raised in the impartial hearing, but unaddressed by the IHO. According to the defendants, any aspect of the IHO's decision that the Parent did not cross-appeal—including the IHO's decision not to reach a particular claim—"is now final and binding" and, thus, outside this Court's review. (Mem. of Law in Supp. of Defs.' Mot. for Summ. J. and in Opp'n to Pls.' Mot. for Summ. J. at 8.) We disagree.[4]

■ To be sure, an IHO's decision is "binding" upon the parties absent an appeal to the SRO. *See* 8 N.Y.C.R.R. § 200.5(j)(5)(v). However, it does not necessarily follow that a party who does not cross-appeal a favorable IHO decision is precluded from asserting alternative grounds upon which a reviewing court might sustain or reinstate the IHO's judg-

---

4. *Accord J.F. v. N.Y.C. Dep't of Educ.*, No. 12 Civ. 2184(KBF), 2012 WL 5984915, at *9–10 (S.D.N.Y. Nov. 27, 2012). *But see C.F. ex rel.*

*R.F. v. N.Y.C. Dep't of Educ.*, No. 11 Civ. 157(LTS), 2011 WL 5130101, at *12 (S.D.N.Y. Oct. 28, 2011).

ment. *Cf. Drax v. Reno,* 338 F.3d 98, 105–06 (2d Cir.2003) ("An appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it.") (internal quotation marks omitted); *LaBella v. N.Y.C. Admin. for Children's Servs.,* No. 02 Civ. 2355(NGG)(KAM), 2005 WL 2077192, at *2 (E.D.N.Y. Mar. 28, 2005) (noting that a "restraint on seeking appellate review does not mean that a corresponding limitation is placed upon an appellee's general right to advocate alternative grounds by which a court can sustain a judgment").

■ In any event, a party may only pursue such an appeal if she was "aggrieved" by the IHO's findings of fact and decisions. *See* 20 U.S.C. § 1415(g); 8 N.Y.C.R.R. § 200.5(k)(1). In this case, however, the Parent received precisely the relief she sought: reimbursement for the Student's unilateral placement at the Rebecca School. Therefore, the Parent was not aggrieved, and she "had neither the responsibility nor the right" to cross-appeal any portions of the IHO's decision.[5] *Antkowiak by Antkowiak v. Ambach,* 838 F.2d 635, 641 (2d Cir.1988) (holding that a parent who receives tuition reimbursement is not "aggrieved" under 20 U.S.C. § 1415(g)); *see also R.B. ex rel. L.B. v. Bd. of Educ. of N.Y.,* 99 F.Supp.2d 411, 415–16 (S.D.N.Y.2000) (ruling that a parent was not required to appeal a favorable IHO decision because "there was nothing for [her] to appeal").

■ Based upon the foregoing, we conclude that the unaddressed claims are properly before this Court and, indeed, may provide an alternative basis for granting the Parent tuition reimbursement.[6]

---

5. Under general principles of New York law, the result would not change if we assumed, arguendo, that the Parent failed to prevail on claims that the IHO did not address. *See Parochial Bus Sys., Inc. v. Bd. of Educ. of N.Y.,* 60 N.Y.2d 539, 470 N.Y.S.2d 564, 458 N.E.2d 1241, 1243 (1983) (a party who receives the "full relief sought" is not entitled to a cross-appeal, even if that party "failed to prevail on all the issues that had been raised"); *see also Mixon v. TBV, Inc.,* 76 A.D.3d 144, 904 N.Y.S.2d 132, 136 (2010) ("[T]he concept' of aggrievement is about whether relief was granted or withheld, and not about the reasons therefor.").

6. Although we need not reach the issue, we note that it is even clearer that the unaddressed claims were properly before the SRO. In its petition appealing the IHO's decision, the Department urged the SRO to dismiss on the merits any claims that "the IHO did not address" (Verified Pet. at ¶ 37), thus plainly inviting their judicial resolution, *cf. M.H.,* 685 F.3d at 250–51 (finding that it was appropriate for the IHO to consider issues that the parents did not raise in their due process complaint when the Department "opened the door" to those issues by raising them during the impartial hearing); *see also* N.Y. Educ. Law § 4404(2) (empowering the SRO to review and modify *"any"* of the IHO's determinations with respect to an alleged failure to provide an appropriate special education program) (emphasis added).

Defendants contend that, if an SRO permitted a respondent (*i.e.,* an appellee) to assert alternative claims in its answer without a formal cross-appeal, the SRO would effectively deprive the petitioner (*i.e.,* the appellant) of the opportunity to file responsive papers on the merits, as state law generally does not permit pleadings other than the petition. *See* 8 N.Y.C.R.R. § 279.6 ("No pleading other than the petition or answer will be accepted or considered by [an SRO], except a reply by the petitioner to any procedural defenses interposed by respondent or to any additional documentary evidence served with the answer."). However, the ability of the respondent to raise new claims is circumscribed by the allegations in the due process complaint, *see* 20 U.S.C. § 1415(f)(3)(B), and the arguments the Department pursued below, *see M.H.,* 685 F.3d at 250–51. Therefore, a petitioner can—and, in this case, did—preemptively address the alternative claims in its own petition.

*See R.E.,* 694 F.3d at 190. Under this circumstance, rather than reaching the merits of the unreviewed claims, we remand this matter to the SRO, who is "uniquely well suited to review the content and implementation" of the Student's IEP. *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.,* 288 F.3d 478, 487 (2d Cir.2002); *see also N.Y.C. Dep't of Educ. v. V.S.,* No. 10 Civ. 5120(JG)(JO), 2011 WL 3273922, at *11 (E.D.N.Y. July 29, 2011) (noting that remand of an IDEA case is appropriate "where the district court has received insufficient guidance from state administrative agencies as to the merits of a case"). We therefore decline to review the administrative decisions regarding predetermination and the Department's accommodation of the Student's sensory needs.

## CONCLUSION

For the foregoing reasons, the motions (docket nos. 11 and 18) are denied, and this case is remanded to the SRO.