Jaquin v Canastota Cent. Sch. Dist. (2023 NY Slip Op 01039)

Jaquin v Canastota Cent. Sch. Dist.

2023 NY Slip Op 01039

Decided on February 23, 2023

Appellate Division, Third Department

Garry, P.J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 23, 2023

534854

[*1]Angela Jaquin, Individually and as Parent and Guardian of Shelby Jones, an Infant, Appellant,
v
Canastota Central School District, Respondent.

Calendar Date:January 17, 2023

Before: Garry, P.J., Clark, Aarons, Reynolds Fitzgerald and McShan, JJ.

McMahon Kublick, PC, Syracuse (W. Robert Taylor of counsel), for appellant.
Baxter & Smith, PC, Buffalo (Louis B. Dingeldey Jr. of counsel), for respondent.

Garry, P.J.
Appeal from a judgment of the Supreme Court (Joseph A. McBride, J.), entered July 27, 2021 in Madison County, upon a verdict rendered in favor of defendant.
During the relevant time period, Shelby Jones (hereinafter the child), a kindergartener, was identified as a student with a disability within the meaning of section 504 of the Rehabilitation Act of 1973 (29 USC § 794 [hereinafter Section 504]) because of deficiencies related to her physical coordination and strength. Defendant's Section 504 Committee thus generated a service plan for her (hereinafter the 504 plan) in accordance with district policy. The 504 plan, while noting that the child's physical limitations may affect her independence in the classroom with fine motor, perceptual motor and visual motor based activities, provided for no specific accommodations but authorized certain occupational and physical therapies. The child was allegedly injured during her participation in the school's mainstream physical education class. At the time of the incident, the child had just successfully completed an adaptive physical education program known as "KiDnastics" — a multi-week unit in which the students developed fundamental motor skills, such as rolling, jumping, balancing, vaulting, hanging and climbing. After successfully completing the graduated skills lessons and her individual evaluation, she was permitted to continue practicing her skills at various stations throughout the gym while the gym teacher continued evaluating other students. The child chose to practice her "star jump" off a 16-inch box mat. This time, as she jumped, her feet did not lift off the box mat, and she toppled forward onto a floor mat, landing on her arm.
Plaintiff, the child's mother, commenced this action alleging causes of action sounding in negligence, later refined to negligent supervision, and expressly conceded that she did not intend to challenge the sufficiency of the 504 plan. Following joinder of issue and discovery, defendant unsuccessfully moved for summary judgment dismissing the complaint, a determination that this Court upheld on appeal (175 AD3d 1647 [3d Dept 2019]). After the case was scheduled for a bifurcated jury trial on the issue of liability, plaintiff served a CPLR 3101 disclosure of her intent to call as an expert an educator with several certifications and nearly 30 years of experience in education. Defendant moved to preclude that expert from testifying as to certain matters and to prevent plaintiff from proffering any evidence tending to question the sufficiency of the 504 plan. Following oral argument, Supreme Court granted defendant's motion in full, noting plaintiff's prior concession and finding the qualifications of plaintiff's proposed expert to be too generalized to qualify him as an expert. Thereafter, defendant moved to further preclude the testimony of three of plaintiff's lay witnesses — the child's kindergarten teacher, physical therapist and occupational therapist — asserting [*2]that they would testify that the child should have been subject to some supervision that was different from the supervision of other students, thereby implicitly challenging the sufficiency of the 504 plan. At oral argument on that motion, the court accepted defendant's position that the 504 plan restricted defendant from supervising the child in any manner not expressly specified therein and, thus, that there was conflict between federal antidiscrimination laws and the state common-law standards for negligent supervision claims. Following an offer of proof as to each witness, the court agreed that the testimony of the lay witnesses would serve only to attack the 504 plan and thus precluded same.
At trial, the jury was presented with testimony from plaintiff, the child, the gym teacher, the developer of the KiDnastics program and defendant's assistant superintendent for instruction and special programs, the last of whom extensively addressed defendant's Section 504 policy and his position that modifying the child's participation in KiDnastics or adding a higher degree of supervision than that provided to the rest of the class would constitute "a significant change in her 504 plan" and, without involvement from defendant's Committee on Special Education, discrimination under federal law. Following the presentation of evidence, Supreme Court, having accepted defendant's conflict argument, instructed the jury as to both negligent supervision and the parameters of certain federal laws. The jury ultimately returned a verdict in favor of defendant, and plaintiff appeals, arguing that the court's erroneous evidentiary rulings and improper jury instructions resulted in substantial injustice. We agree.
Contrary to defendant's repeated assertions before Supreme Court, there is no conflict here between state and federal law. It is well established in this state's common law that, although "[s]chools are not insurers of safety," they "are under a duty to adequately supervise the students in their charge[,] and they will be held liable for foreseeable injuries proximately related to the absence of adequate supervision" (Mirand v City of New York, 84 NY2d 44, 49 [1994]). The nature of the duty owed is "to exercise such care . . . as a parent of ordinary prudence would observe in comparable circumstances" (id. [internal quotation marks and citation omitted]). "This duty includes the obligation to assign students to supervised athletic activities that are within their abilities" (Lindaman v Vestal Cent. School Dist., 12 AD3d 916, 916 [3d Dept 2004] [citations omitted]; see Snyder v Morristown Cent. School Dist. No. 1, 167 AD2d 678, 679 [3d Dept 1990]), and this Court has clearly stated that "a school that is aware of a student's particular disability that makes him or her more susceptible to injury is required to exercise care commensurate with such disability" (Jaquin v Canastota Cent. Sch. Dist., 175 AD3d 1647, 1648 [3d Dept 2019]; see Lewis v Board of Educ. [*3]of the Lansingburgh Cent. Sch. Dist., 137 AD3d 1521, 1522 [3d Dept 2016]).
Separately, it is a mandate under the federal Individuals with Disabilities Education Act (20 USC § 1400 et seq. [hereinafter IDEA]), as well as this state's complementary statutory scheme (Education Law § 4401 et seq.), that students with disabilities are entitled to "a free appropriate public education that emphasizes special education and related services designed to meet their unique needs" (20 USC § 1400 [d] [1] [A]; see 20 USC § 1412 [a] [1]; see also Education Law § 4402 [2] [a]; see generally Matter of Northeast Cent. School Dist. v Sobol, 79 NY2d 598, 603 [1992]). This includes placing such students in the "[l]east restrictive environment" possible, a concept that disfavors exclusion from the mainstream educational environment where inclusion may be achieved through the use of supplementary aids and services (20 USC § 1412 [a] [5] [A]; see 34 CFR 300.114; see also 8 NYCRR 200.1 [cc]; 200.6 [a] [1]). The intent of Section 504 is similar to that of IDEA, but it is broader in scope, extending not only to individuals who in fact have a disability but also those who are regarded as having such (see C.L. v Scarsdale Union Free Sch. Dist., 744 F3d 826, 831 [2d Cir 2014]; Muller v Committee on Special Educ. of E. Islip Union Free Sch. Dist., 145 F3d 95, 99 n 2 [2d Cir 1998]; see also 34 CFR 104.3 [j]; 104.33 [a], [b] [1]). Also related is Title II of the Americans with Disabilities Act of 1990 (42 USC § 12131 et seq. [hereinafter the ADA]); although "there are no specific ADA regulations concerning the education of disabled children, the ADA has been interpreted coextensively with [Section 504's] special education requirements" (I.M. v City of New York, 178 AD3d 126, 134 [1st Dept 2019]; see R.B. v Board of Educ. of the City of New York, 99 F Supp 2d 411, 419 [SD NY 2000]). In terms that are virtually identical for our purposes, both Section 504 and the ADA declare that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance" (29 USC § 794 [a]; see 42 USC § 12132; see generally Weixel v Board of Educ. of City of New York, 287 F3d 138, 146 n 6 [2d Cir 2002]).
The confusion surrounding the foregoing, distinct frameworks appears to have begun following plaintiff's expert disclosure, in which plaintiff proffered that her expert for trial was expected to opine, in part, that the child was not physically capable of performing the activities in which she was engaged at the time she was injured and that allowing her to do so without "direct supervision" was negligent. As the litigation unfolded, defendant distorted this argument at every turn, urging that it was a collateral attack on the sufficiency of the 504 plan and inaccurately reducing plaintiff's position [*4]to the view that only exclusion from mainstream physical education or the assignment of a one-on-one aide would have been adequate. Most offensively, defendant maintains that it would in fact have been illegal for defendant to do anything more than what is expressly directed in the 504 plan — that is, nothing — to supervise the child.
Defendant is correct that any "significant change in placement," such as excluding the child from participation in mainstream physical education altogether, would trigger certain procedural safeguards (34 CFR 104.35 [a]; see U.S. Department of Education, Office for Civil Rights, Parent and Educator Resource Guide to Section 504 in Public Elementary and Secondary Schools at 23 [Dec. 2016], available at https://www2.ed.gov/
about/offices/list/ocr/docs/504-resource-guide-201612.pdf [last accessed Feb. 2, 2023]), and that such changes may generally only be made by committee (see 30 CFR 104.35 [c] [3]; see also Education Law § 4402; 8 NYCRR 200.1 [k]; 200.3). We also agree that it would be discriminatory for a school district to "[p]rovide different or separate aid, benefits, or services to handicapped persons . . . unless such action is necessary to provide qualified handicapped persons with aid, benefits, or services that are as effective as those provided to others" (34 CFR 104.4 [b] [1] [iv]; see 34 CFR 104.3 [j] [1]; [l] [2]).
However, we soundly reject defendant's extension of these principles — a school district's written 504 plan does not operate as a supervision ceiling in all respects and circumstances.[FN1] The central purpose of Section 504 is to assure that students with disabilities receive equal treatment in relation to their peers (see Dean v University at Buffalo Sch. of Med. & Biomedical Sciences, 804 F3d 178, 189 [2d Cir 2015]; Doe v Pfrommer, 148 F3d 73, 83 [2d Cir 1998]), that is, that they receive support, based on their individual needs, so that they may also meaningfully access a given educational experience (see Alexander v Choate, 469 US 287, 301 [1985]; see also Fry v Napoleon Community Schools, 580 US 154, 170 [2017]; I.M. v City of New York, 178 AD3d at 138). This stands in stark contrast to defendant's reliance upon federal antidiscrimination law as a shield from liability. Plainly put, if two kindergarteners have difficulty performing a skill in a mainstream physical education class, adequate support should be provided to both of them — not, illogically, only the one who does not have a 504 plan. Yet that is precisely what defendant's argument devolves to.
This misapprehension of law led directly to the several issues presented by plaintiff upon appeal. Initially, stated most succinctly, evidence or argument that conveyed to the jury that defendant was legally prohibited from any form of supervision not expressly provided for in the 504 plan was improper. This is not to say that the 504 plan was improperly admitted; as plaintiff acknowledges, the 504 plan is clearly relevant to the child's [*5]capabilities and defendant's knowledge thereof.
As to the proposed lay witnesses, Supreme Court erroneously concluded that the testimony of the child's kindergarten teacher, physical therapist and occupational therapist was offered solely to challenge the adequacy of the 504 plan. Instead, each of those witnesses possessed direct knowledge of the child and her capabilities and, according to plaintiff's proffer, would testify as to how they supervised her in comparable physical activities in light of her known limitations (see Mirand v City of New York, 84 NY2d at 49; Gray v South Colonie Cent. School Dist., 64 AD3d 1125, 1128 [3d Dept 2009]).
Plaintiff's CPLR 3101 (d) (1) disclosure relative to her proposed expert witness, Martin Brophy, indicates that Brophy possessed New York State certifications in special education, physical education and elementary education, with approximately 10 years of experience as a kindergarten teacher and nearly 20 years of collective experience as a special education teacher and a physical education teacher at the junior high school level. Although defendant sought merely to preclude Brophy's expert testimony on certain enumerated subjects, Supreme Court concluded generally that, without a detailed history of Brophy's direct knowledge of the level of supervision for the KiDnastics gym curriculum, it could not qualify Brophy as an expert at all. The court reasoned that plaintiff did not allege in its disclosure that Brophy had any particularized experience in 504 plans, gym safety plans or creating gym curricula that required additional supervision.
It must be emphasized that the rule governing expert disclosure requires only that a party disclose "in reasonable detail" the subject matter and the substance of the facts and opinions on which the expert is expected to testify, in addition to the qualifications of each expert witness and a "summary" of the grounds for their opinion (CPLR 3101 [d] [1] [i]). Contrary to Supreme Court's implicit reasoning in wholly precluding this expert, "[t]here is no requirement that [a party] set forth [in an expert disclosure] the specific facts and opinions that will be encompassed in [the expert's] anticipated testimony" (Velez v Roy, 191 AD3d 571, 572 [1st Dept 2021]; see Conway v Elite Towing & Flatbedding Corp., 135 AD3d 893, 894 [2d Dept 2016]; Krygier v Airweld, Inc., 176 AD2d 700, 700-701 [2d Dept 1991]).[FN2] Additionally, although we note that the curriculum vitae submitted by plaintiff was terribly spare, it is not disputed that Brophy possessed state certifications in not one but three relevant areas; these qualifications, which were adequately stated for the purpose of CPLR 3101 (d) (1) (i), were apparently disregarded. The court was also overly restrictive in rejecting Brophy's teaching experience and implying that an expert in this matter must have direct experience with the KiDnastics curriculum. Preclusion of a witness' testimony is always a drastic measure, and, in [*6]our view, the more appropriate remedy for any alleged failures in specificity here, where defendant made no demand for additional discovery with respect to Brophy's credentials (see Barrowman v Niagara Mohawk Power Corp., 252 AD2d 946, 946 [4th Dept 1998], lv denied 92 NY2d 817 [1998]), would have been to require plaintiff to provide supplemental disclosure (see e.g. Reed v New York State Elec. & Gas Corp., 183 AD3d 1207, 1213-1214 [3d Dept 2020]; Mary Imogene Bassett Hosp. v Cannon Design, Inc., 97 AD3d 1030, 1031-1032 [3d Dept 2012]). Notably, this solution was proffered by plaintiff when defendant failed to object to her disclosure, opting instead to immediately move for preclusion. In sum, we agree with plaintiff that preclusion of Brophy's testimony in its entirety based upon plaintiff's expert disclosure was an abuse of discretion.
Although Brophy was not permitted to testify at trial, the confusion generated by defendant in arguments relative to his potential testimony resulted in the admission of what was, in essence, rebuttal testimony from defendant's assistant superintendent for instruction and special programs, who imprecisely advised the jury on federal law. Against this backdrop, by the time of the charge conference, Supreme Court was in an unworkable position, needing to somehow contextualize for the jury the federal law introduced by defendant while instructing the jury on the state law that should have exclusively governed their inquiry.
Supreme Court did instruct the jury on the common-law standard for negligent supervision, and its instruction in that respect was generally in line with the pattern jury instruction for municipal liability for inadequate supervision in schools (see PJI 2:227), as well as common-law principles applicable to this case (see Mirand v City of New York, 84 NY2d at 49; Jaquin v Canastota Cent. Sch. Dist., 175 AD3d at 1648; Lindaman v Vestal Cent. School Dist., 12 AD3d at 916). However, the court then went on to provide detailed instructions regarding the 504 plan and the limitations that defendant asserted arose from the existence of that plan; the court specifically advised the jury about the school district's duty to avoid discriminating against the child.
The question of discrimination was irrelevant here, where there is no claim under the IDEA, Section 504 or the ADA and the sole cause of action before the jury was common-law negligent supervision.[FN3] Thus, much of the federal law presented to the jury was entirely irrelevant. Moreover, and of greater concern, the instruction erroneously suggested to the jury that defendant had no power to supervise the child beyond providing accommodations specified in her 504 plan, of which there were none.[FN4]
Ultimately, the jury was presented with evidence and an instruction unduly concerned with defendant's compliance with federal law, confusing the fundamental nature of this case. We therefore agree with plaintiff that the charge created doubt as to the principles [*7]of law to be applied (see J.R. Loftus, Inc. v White, 85 NY2d 874, 876 [1995]; Martuscello v Jensen, 134 AD3d 4, 8-9 [3d Dept 2015]).
The cumulative effect of the foregoing errors, including the substantial influence the excluded evidence may have had on the outcome of the case (see CPLR 2002; Brooks v Blanchard, 174 AD3d 1362, 1365 [4th Dept 2019]), mandates reversal and a new trial.
Clark, Aarons, Reynolds Fitzgerald and McShan, JJ., concur.
ORDERED that the judgment is reversed, on the law, with costs, and matter remitted to the Supreme Court for a new trial.

Footnotes

Footnote 1: It warrants noting that a 504 plan is not explicitly required by federal law, although school districts will often carry out their obligations under the foregoing federal laws by the creation of such a written plan (see Parent and Educator Resource Guide to Section 504 in Public Elementary and Secondary Schools at 10).

Footnote 2: The expert disclosure reveals that Brophy's opinions were to be based upon his review of the KiDnastics program; the 504 plan; the child's school file, including her testing records, evaluations, progress reports and a medical file; defendant's incident report; photographs of the gym; a number of depositions; and Brophy's education, training and experience in the fields of special education, physical education and elementary education.

Footnote 3: Unlike the cases relied upon by defendant, the jury was similarly unconcerned with whether the gym teacher could have been terminated for any 504 plan violation.

Footnote 4:We understand the need to limit the jury from considering certain irrelevant aids and services, such as the assignment of a designated one-on-one aide to the child during physical education (see generally 34 CFR 104.4 [b] [1] [iv]). However, this would be more appropriately addressed by limiting evidence and argument in that regard.